DISCIPLINARY COUNSEL *v.* HINES.

[Cite as *Disciplinary Counsel v. Hines,* 133 Ohio St.3d 166, 2012-Ohio-3929.]

*Attorneys—Misconduct—Sexual relation with client—Six-month stayed suspension.*

(Nos. 2011-0309 and 2011-1759—Submitted February 8, 2012—Decided September 6, 2012.)

ON CERTIFIED REPORT of the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 10-088.

_____

**Per Curiam.**

{¶ 1} Respondent, Dean Edward Hines of Centerville, Ohio, Attorney Registration No. 0062990, was admitted to the practice of law in Ohio in 1994. On October 11, 2010, relator, disciplinary counsel, filed a complaint alleging that Hines had engaged in an inappropriate relationship with a client and violated Prof.Cond.R. 1.8(j) and 8.4(h).

{¶ 2} The parties stipulated to Hines's misconduct. Upon the parties' stipulations, the Board of Commissioners on Grievances and Discipline accepted the parties' joint recommendation that we publicly reprimand Hines. However, we did not accept the recommendation and remanded the case for further proceedings.

{¶ 3} On October 14, 2011, the Board of Commissioners on Grievances and Discipline issued a second report and recommended a 12-month suspension of Hines's law license, with six months stayed.[1]

_____

1. The board report recommending that we adopt the parties' consent-to-discipline agreement was filed in case No. 2011-0309. Upon filing with this court, the board report following remand was assigned case No. 2011-1759. We consolidate these two cases, sua sponte, for disposition.

**Misconduct**

{¶ 4} In early 2009, Hines agreed to represent a new client in an ongoing domestic-relations dispute with the client's ex-husband. On March 16, 2009, after several appointments and a pretrial conference, Hines invited the client to dinner, where he discussed his interest in dating her. Hines assured the client that a personal relationship between the two would not pose a conflict of interest with respect to their attorney-client relationship. After another dinner the next evening, Hines and the client became sexually intimate. Describing her feelings at this time, the client later testified that she was overwhelmed by Hines's advances and that she was afraid to resist him when she needed his legal assistance.

{¶ 5} In the months that followed, Hines continued to represent the client in the domestic dispute while continuing their romantic relationship. Hines hired the client to work as a bookkeeper at his law firm, leased a car for her use, and contributed to her mortgage and utility payments. They traveled together to Austria, Arizona, and South Carolina, and when the client underwent surgery requiring a lengthy recovery period, Hines moved the client and her children into his home.

{¶ 6} The relationship fell apart in November 2009. On November 9, 2009, Hines called 9-1-1 to report a domestic dispute with the client. He filed charges of aggravated menacing and domestic violence and obtained a temporary protection order barring any contact with Hines. The charges were eventually dropped.

{¶ 7} The day after their altercation, Hines fired the client. A few days later, he mailed a letter simultaneously notifying her of an adverse ruling in the underlying domestic case and of the end of their attorney-client relationship.

{¶ 8} When Hines mailed the letter, 11 days remained in which the client could protect her legal rights by objecting to the magistrate's ruling. Hines must

have known about the client's vulnerability; during their relationship, she had faced financial troubles and a serious physical illness requiring surgery, not to mention the legal issues for which she had sought Hines's help. Yet Hines did not seek leave for an extension of this deadline, refer the client to another attorney, or otherwise assist the client in protecting her rights. Instead, he left a vulnerable client without legal representation or assistance at a critical time in her case, and he did so through an accusatory letter that blamed the client for the adverse decision.

{¶ 9} Although he left the client without counsel to protect her rights, Hines continued to make overtures to her. He repeatedly e-mailed her and sent her text messages. As a practical matter, these overtures encouraged the client to violate the temporary protection order. She did not accept that invitation, even after Hines's promises that he would not report her to police if she responded.

{¶ 10} The parties have stipulated that Hines's conduct violated Prof.Cond.R. 1.8(j), which generally prohibits sexual activity between attorneys and their clients, and Prof.Cond.R. 8.4(h), which bars behavior that reflects adversely on the fitness of a lawyer to practice law. We adopt the board's findings of fact and misconduct.

### Sanction

{¶ 11} The parties stipulated to the absence of aggravating factors. However, the Board of Commissioners on Grievances and Discipline identified several aggravating factors pertaining to Hines's misconduct: (1) he "knew from the outset that his conduct violated the Ohio Rules of Professional Conduct but he nevertheless acted with a clearly selfish motive," (2) he "has attempted to excuse or minimize that conduct rather than acknowledge that it was wrong," and (3) the client "was a vulnerable [person] and has been harmed as a result of" Hines's misconduct. Hines objects to these findings. We overrule the objections and adopt the findings of aggravating factors.

**{¶ 12}** The parties stipulated to the following mitigating factors: (1) Hines has no prior disciplinary record, (2) Hines cooperated with the investigation of his misconduct, and (3) as evidenced by several letters of support, Hines enjoys a positive reputation in the legal community.

**{¶ 13}** Disciplinary counsel suggests a six-month suspension, with all six months stayed. Hines suggests a public reprimand or a stayed suspension of no more than six months. The Board of Commissioners on Grievances and Discipline recommends that we suspend Hines from the practice of law for 12 months, with the final six months stayed.

**{¶ 14}** In the past, we have imposed public reprimands on attorneys who engaged in improper consensual relationships with their clients, when the relationships did not compromise the clients' interests. *See Disciplinary Counsel v. Siewert*, 130 Ohio St.3d 402, 2011-Ohio-5935, 958 N.E.2d 946, ¶ 9 (citing several such outcomes). But this is not a simple case of mutual consent; Hines used his position of power to initiate and pursue an intimate relationship with a vulnerable client who was afraid to resist. Furthermore, Hines's conduct in leaving the client without legal assistance at a critical juncture in her case threatened her interests. A public reprimand is not enough.

**{¶ 15}** Nor do we find Hines's misdeeds comparable to those of attorneys whom we have suspended. *See, e.g.*, *Cleveland Metro. Bar Assn. v. Lockshin*, 125 Ohio St.3d 529, 2010-Ohio-2207, 929 N.E.2d 1028 (indefinite suspension for an attorney who made inappropriate sexual comments to a number of women, including clients, and who failed to file a notice of appeal on time); *Disciplinary Counsel v. Goldblatt*, 118 Ohio St.3d 310, 2008-Ohio-2458, 888 N.E.2d 1091 (indefinite suspension for an attorney who attempted to arrange a sexual encounter with a minor); *Butler Cty. Bar Assn. v. Williamson*, 117 Ohio St.3d 399, 2008-Ohio-1196, 884 N.E.2d 55 (indefinite suspension for an attorney in an improper-relationship case who lied about the relationship and failed to respond

to subpoenas). Hines's conduct involved only one client, he has not engaged in any deception to hide the misconduct, and he has cooperated with the disciplinary process.

{¶ 16} The appropriate penalty in cases like these is often a stayed suspension, which reflects the hope that the misconduct is limited to one occurrence and the reality that its recurrence would necessitate serious consequences. *See, e.g.*, *Toledo Bar Assn. v. Burkholder*, 109 Ohio St.3d 443, 2006-Ohio-2817, 848 N.E.2d 840.

{¶ 17} Like Hines, the attorney in *Burkholder* pursued an improper relationship with a vulnerable domestic-relations client. Burkholder made numerous advances to the client until she fired him. However, Burkholder had no prior disciplinary violations, and he cooperated throughout the disciplinary process. *Id.* at ¶ 9. We imposed a six-month, stayed suspension of Burkholder's license to practice law. *Id.* at ¶ 14.

{¶ 18} We imposed the same penalty in *Disciplinary Counsel v. Siewert*, 130 Ohio St.3d 402, 2011-Ohio-5935, 958 N.E.2d 946. The attorney in *Siewert* engaged in a consensual but improper relationship with a domestic-relations client. Unlike Hines, Siewert had a record of prior discipline; however, we noted as mitigating factors Siewert's struggles with depression and his efforts to correct his personal problems. *Id.* at ¶ 8.

{¶ 19} We find *Burkholder* and *Siewert* instructive. Like the attorneys in those cases, Hines made a serious mistake and abused the position of trust conferred upon attorneys, but the limited nature of his misconduct and his cooperative approach to the investigation give us reason to believe that Hines will conduct himself appropriately in the future.

{¶ 20} Accordingly, we suspend Hines from the practice of law for six months, and we stay the suspension on the condition that Hines engage in no further misconduct. Costs are taxed to Hines.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Joseph M. Caligiuri, Senior Assistant Disciplinary Counsel, for relator.

Kegler, Brown, Hill & Ritter and Christopher J. Weber, for respondent.

_____