**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Lake Cty. Bar Assn. v. Davies,* **Slip Opinion No. 2015-Ohio-4904.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2015-OHIO-4904

LAKE COUNTY BAR ASSOCIATION *v.* DAVIES.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Lake Cty. Bar Assn. v. Davies,* Slip Opinion No. 2015-Ohio-4904.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including misappropriating client funds, engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation, failing to provide competent representation, failing to cooperate with a disciplinary investigation, charging an excessive fee, and engaging in conduct that adversely reflects on the lawyer's fitness to practice law—Permanent disbarment.*

(No. 2014-1735—Submitted March 11, 2015—Decided December 1, 2015.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 2013-005.

_____

**Per Curiam.**

{¶ 1} Respondent, David Harrison Davies of Willoughby, Ohio, Attorney Registration No. 0016318, was admitted to the practice of law in Ohio in 1973. On February 27, 2014, relator, Lake County Bar Association, filed a three-count second amended complaint with the Board of Commissioners on Grievances and Discipline.[1] The complaint alleged that Davies settled a personal-injury case without his clients' authorization and never distributed the funds, failed to competently represent another client in a dental-malpractice case, and failed to disclose a conflict of interest and committed other ethical violations in the process of representing a client in the administration of an estate.

{¶ 2} At the July 18, 2014 disciplinary hearing before a panel of the board, Davies stipulated to the truth of the facts as alleged in the second amended complaint, and the parties stipulated to the admission of each other's exhibits into evidence. Davies, the only witness appearing at the hearing, testified about the devastating effects of a son's death in 1999; the death of his father in 2001; the significant health problems of his newborn grandson, who was living with him, in 2004; the unexpected death of his son-in-law, who was living with him, in 2009; the death of his father-in-law, with whom he was close, in 2010; the death of his older brother two years later from Alzheimer's disease; and the depression that he did not acknowledge for a number of years, for which he ultimately sought professional help.

{¶ 3} In its report, the panel stated that Davies had admitted the factual allegations in his answer to the complaint and that he did not dispute any of the alleged violations that remained pending at the end of the hearing. The panel recommended an indefinite suspension, with conditions on Davies's future reinstatement. The board adopted the panel's findings of fact and conclusions of

---

[1] Effective January 1, 2015, the Board of Commissioners on Grievances and Discipline has been renamed the Board of Professional Conduct. *See* Gov.Bar R. V(1)(A), 140 Ohio St.3d CII.

law but recommended that Davies be permanently disbarred. Davies has objected to the board's recommended sanction, focusing in large part on his undiagnosed depression that was recognized after the misconduct had occurred and that he alleges contributed greatly to his misconduct.

{¶ 4} We adopt the board's findings of fact and misconduct, overrule Davies's objections, and agree that Davies should be permanently disbarred.

### Misconduct

#### Count One—The Scott Matter

{¶ 5} In October 2008, Davies filed a personal-injury suit on behalf of Nannette Scott and her husband. He voluntarily dismissed the case in 2009, then eventually refiled, settled, and dismissed it, all without the knowledge and authorization of his clients. Mrs. Scott found out about the settlement during a conversation with another lawyer.

{¶ 6} In June 2009, Davies accepted a check for $14,500 from the Scotts' insurance company, made payable to Mrs. Scott, Mr. Scott, and Davies. The Scotts allege that the endorsement signatures on the back of that check are not theirs and were signed without their permission, and the panel and board concluded that Davies signed their names without their knowledge or authorization. After signing his own name to the back of the check, Davies deposited the money into his client trust account and took some of the money for his attorney fees. The Scotts did not receive any of the money. In August 2011, Davies received another check for $1,000 from the insurance company. The smaller check was never negotiated, and its whereabouts are unknown.

{¶ 7} In October 2011—after he had settled the case—Davies requested that his clients execute releases. The Scotts refused to sign the releases, hired a new attorney, filed a malpractice suit against Davies, and obtained a $100,000 default judgment against him. That judgment remains unsatisfied.

{¶ 8} The panel and board found that Davies's conduct violated Prof.Cond.R. 1.2(a) (requiring a lawyer to abide by the client's decisions concerning the objectives of representation and to consult with the client as to the means by which they are to be pursued), 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter), 1.15 (requiring a lawyer to preserve the identity of client funds and property and promptly deliver funds or other property that the client is entitled to receive), 8.4(b) (prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness), 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice).  The panel unanimously dismissed an allegation that Davies violated Prof.Cond.R. 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from the client).

Count Two—The Babcock Matter

{¶ 9} In December 2009, Davies filed a dental-malpractice case on behalf of William C. Babcock.  In the course of that litigation, Davies failed to timely produce the necessary affidavit of merit, failed to produce an expert report, and failed to file a response to the defendants' motion to dismiss or for summary judgment, which was granted by the trial court.  He filed an appeal, but his appellate brief was stricken because it did not comply with court rules.  He was granted leave to file a corrected brief but failed to do so, and the appeal was dismissed.  Although the court of appeals granted his motion to reinstate the appeal, the appeal ultimately failed on the merits.  The appellate court noted in its opinion that his repeated failures to comply with the trial court's orders and to produce an expert report during the year that the case was pending demonstrated a

complete disregard for the judicial system and the defendants' rights.  *See Babcock v. Albrecht*, 11th Dist. Lake No. 2010-L-150, 2012-Ohio-1129, ¶ 28.

{¶ 10} Babcock filed a grievance against Davies, and Davies failed to respond to the ensuing disciplinary investigation.

{¶ 11} The panel and board found that this conduct violated Prof.Cond.R. 1.1 (requiring a lawyer to provide competent representation to a client), 1.3, and 8.4(d) and Gov.Bar R. V(4)(G) (now Gov.Bar R. V(9)(G)) (requiring a lawyer to cooperate with a disciplinary investigation).  The panel unanimously dismissed an allegation that Davies violated Prof.Cond.R. 1.4 (requiring a lawyer to reasonably communicate with a client).

Count Three—The Griffith Estate

{¶ 12} Davies represented Raymond Griffith in various matters over several years.  He defended him in an eviction action, obtained the revocation of a power of attorney that had been granted by Griffith's father to another person, and defended and settled a claim filed against Griffith's father for nursing-home care—all of which served to protect Griffith's expectancy in a parcel of real estate owned by his father—and represented Griffith in a case involving unpaid child support.  Davies claims that because Griffith had no money to pay him for his legal representation, they entered into a contingent-fee agreement entitling Davies to one-third of the gross value of any interest that Griffith acquired in the real estate or any settlement he received in lieu of the real estate.  Davies never produced a signed contingency-fee agreement.

{¶ 13} After Griffith took title to the real estate, he and Davies apparently agreed that Davies would instead receive a flat fee of $50,000 for the past legal representation, and they reduced the agreement to a promissory note for that amount that was secured by a mortgage on the real estate.  Griffith's obligation to pay Davies $50,000 remained unpaid at Griffith's death, intestate, in 2007 and was the largest amount owed by his estate to any creditor.

**{¶ 14}** Davies was retained by Griffith's daughter, Rae Ann Enos, to assist her in the administration of Griffith's estate. While probating the estate, Davies obtained some of the proceeds from the sale of the real estate to satisfy in full the debt for $50,000 he claimed he was owed, but he never advised Enos that he was the largest creditor of the estate, never had her sign a waiver of the conflict of interest that arose when he was both a creditor of the estate and the attorney who was probating it, and never submitted his claim to the probate court for approval.

**{¶ 15}** While the estate was being probated, Enos informed Davies that she had a half-sister named Deana Ivancic, who was Griffith's biological daughter by a woman whom Griffith had never married. Enos told Davies that Ivancic may have been adopted by the man who married Ivancic's mother. Davies took no action to determine whether Ivancic was a legitimate heir to Griffith's estate, and the estate was closed.

**{¶ 16}** In June 2009, Ivancic discovered that Griffith had died two years earlier. She retained an attorney, who learned that Griffith's estate had been administered without including Ivancic, who had not been adopted by the man her mother married, as an heir. Ivancic filed an application to reopen the estate, but Davies made no filing in response to Ivancic's application, he failed to attend any scheduled hearings, and he did not return telephone calls to Ivancic's attorney. Because Davies and Enos were not cooperating in reopening the estate, Ivancic filed a breach-of-fiduciary-duty lawsuit against Enos, who obtained new counsel. Ivancic later discovered that Davies had received the $50,000 payment from the estate and added him as a defendant, and Enos cross-claimed against Davies. Following a hearing, Davies was found to have unlawfully taken the $50,000 from the estate and was ordered to return those funds, plus $1,500 of the $3,000 he had received in attorney's fees for probating the estate. He was also ordered to pay a total of $16,009.80 in attorney fees to Ivancic and Enos. Although Davies's bank records show that he deposited substantial funds into his accounts from July

2011 through January 2012, he has never satisfied the $67,509.80 judgment against him and was held in contempt for failing to comply with the court's order. The panel and board found that he did not cooperate in the judgment-debtor proceedings against him and also found that although Davies claimed that he did not know the sources of the deposits made into his client trust account, he admitted that he had paid personal expenses directly out of the account.

{¶ 17} The panel and board found that Davies's conduct in this matter violated Prof.Cond.R. 1.1, 1.5(a) (prohibiting a lawyer from making an agreement for, charging, or collecting a clearly excessive fee), 1.7(b) (prohibiting the continued representation of a client if a conflict of interest would be created, unless the affected client gives informed consent in writing), 1.8(a)(2) (prohibiting a lawyer from knowingly acquiring an ownership, possessory, security or other pecuniary interest that is adverse to a client unless the client is advised in writing of the desirability of obtaining independent legal counsel), 8.4(d), and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). With respect to the violation of Prof.Cond.R. 8.4(h), the panel and board found that Davies's conduct was sufficiently egregious that it warranted a separate finding of that violation. *See Disciplinary Counsel v. Bricker*, 137 Ohio St.3d 35, 2013-Ohio-3998, 997 N.E.2d 500, ¶ 21.

### Sanction

{¶ 18} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final

determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B).[2]

{¶ 19} The panel determined, and the board agreed, that the applicable aggravating factors are that Davies (1) had a dishonest or selfish motive, (2) engaged in a pattern of misconduct, (3) committed multiple offenses, (4) failed to cooperate in the investigation of the Babcock grievance, (5) failed to admit that he had forged his clients' signatures on a check until the panel hearing, (6) caused significant financial harm to the clients involved in all three counts, and (7) failed to make restitution or pay the judgments against him. *See* BCGD Proc.Reg. 10(B)(1)(b), (c), (d), (e), (g), (h), and (i). The panel additionally found, and the board agreed, that the eighth aggravating factor is Davies's failure to cooperate during the judgment-debtor examinations regarding the Griffith estate.

{¶ 20} In mitigation, the panel and board found that Davies does not have a prior disciplinary record and that he submitted five letters from persons supporting his character and reputation. *See* BCGD Proc.Reg. 10(B)(2)(a) and (e). The panel and board specifically declined to consider Davies's diagnosis of severe depression as a mitigating factor due to certain factual inaccuracies and inconsistencies in a letter submitted by his treating psychiatrist.

{¶ 21} After considering seven disciplinary cases in which the respondents received indefinite suspensions for what the panel viewed as comparable misconduct, the panel recommended that we indefinitely suspend Davies from the practice of law and that we condition his reinstatement on proof of a positive mental-health evaluation and payment of restitution. Although the board adopted the panel's findings of fact and misconduct, it recommended permanent disbarment based on the nature of Davies's conduct and the significant harm he caused to his clients.

---

[2] Effective January 1, 2015, the aggravating and mitigating factors previously set forth in BCGD Proc.Reg. 10(B)(1) and (2) are codified in Gov.Bar R. V(13). 140 Ohio St.3d CXXIV.

**{¶ 22}** Davies has filed objections to the board's findings and recommendation, disputing some details of several of the factual findings but not disputing that he committed the disciplinary violations. Davies relies on his lengthy undiagnosed depression as the reason for the change in his behavior after competently representing clients for almost 30 years and argues that the board should have acknowledged that his psychiatrist's letter accurately explained that his actions were due to his depression. He states that he did not offer this evidence of his mental illness as an excuse for his actions. However, even if he had attempted to make that argument, the evidence he submitted is insufficient to sustain his burden of proving mental-health mitigation. *See* BCGD Proc.Reg. 10(B)(2)(g) (now Gov.Bar R. V(13)(C)(7)).

**{¶ 23}** We overrule Davies's objections, adopt the board's findings of fact and misconduct, and agree that permanent disbarment is the appropriate sanction in this case.

**{¶ 24}** In *Cleveland Bar Assn. v. Dixon*, 95 Ohio St.3d 490, 2002-Ohio-2490, 769 N.E.2d 816, the respondent neglected a probate estate by failing to accurately identify funds, failing to file accurate accounts in a timely fashion, failing to deliver assets to beneficiaries in a timely fashion, and failing to provide full information in a timely fashion to the court and to her client. She also failed to account for fiduciary funds, made improper transfers of those funds by withdrawing them for her own use, transferred $110,000 of her client's assets to her brother and another person without her client's knowledge, charged an excessive fee, and failed to cooperate with the disciplinary investigation for months. The respondent had no prior discipline, submitted positive character witnesses, and ultimately made restitution to the estate, but we did not give the latter factor great weight because of the circumstances surrounding that repayment. We permanently disbarred the respondent for her multiple violations

of the Disciplinary Rules of the Code of Professional Responsibility. *Id*. at ¶ 27-28.

{¶ 25} In *Trumbull Cty. Bar Assn. v. Kafantaris*, 121 Ohio St.3d 387, 2009-Ohio-1389, 904 N.E.2d 875, the respondent did not disclose a personal-injury settlement to the probate court following the death of his client and misappropriated the funds for his own use. He also lied in an affidavit to this court regarding his earlier disciplinary suspension, the terms of which he had failed to abide by, converted a client's proceeds from a life-insurance policy for his own use, kept virtually no written records for at least some of his client trust accounts, and failed to cooperate in the disciplinary process for months. We considered the five aggravating factors found to be present and gave no mitigating weight to character testimony from numerous individuals, most of whom were family members. Finding that the respondent "callously disregarded his client's interests" and "show[ed] disrespect for the judicial system as a whole," we permanently disbarred him from the practice of law. *Id*. at ¶ 15.

{¶ 26} And in *Greene Cty. Bar Assn. v. Saunders,* 132 Ohio St.3d 29, 2012-Ohio-1651, 968 N.E.2d 470, the respondent committed numerous violations of the Disciplinary Rules of the Code of Professional Responsibility and the Rules of Professional Conduct in his representation of four clients. He misappropriated more than $40,000 of a client's funds, lied to the client about having paid her mother's estate taxes with those funds, and refused to discuss the matter with his client. The respondent was retained by a different client to file a lawsuit but failed to do so and never returned that client's phone calls, neglected to finalize an estate account for a third client, even though he had been ordered to do so by a probate judge, and failed to respond to a disciplinary investigation concerning his alleged failure to file an appellate brief in a criminal matter. Based on the serious nature of the misconduct and the many aggravating factors present, we adopted the board's recommendation of permanent disbarment. *Id*. at ¶ 18-19.

**{¶ 27}** In *Dixon,* we stated that misappropriation of client funds carries a "presumptive sanction of disbarment." 95 Ohio St.3d 490, 2002-Ohio-2490, 769 N.E.2d 816, at ¶ 15. Here, misappropriation is just one of Davies's many violations. And although the presumption of a specific sanction may be overcome if "an abundance of mitigating evidence" warrants a different result, *Disciplinary Counsel v. Markijohn*, 99 Ohio St.3d 489, 2003-Ohio-4129, 794 N.E.2d 24, ¶ 8, there is no such evidence here. The compelling interest of protecting the public requires that the strictest discipline be imposed under these circumstances.

**{¶ 28}** Accordingly, David Harrison Davies is permanently disbarred from the practice of law in Ohio. Costs are taxed to Davies.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, and LANZINGER, JJ., concur.

KENNEDY, FRENCH, and O'NEILL, JJ., dissent and would indefinitely suspend the respondent from the practice of law in Ohio.

_____

James P. Koerner, for relator.

David Harrison Davies, pro se.

_____