**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Cleveland Metro. Bar Assn. v. Frenden,* **Slip Opinion No. 2016-Ohio-7198.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-7198

CLEVELAND METROPOLITAN BAR ASSOCIATION *v.* FRENDEN.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Cleveland Metro. Bar Assn. v. Frenden,* Slip Opinion No. 2016-Ohio-7198.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including failing to provide competent representation to a client and failing to keep a client reasonably informed about the status of a legal matter, failing to obtain informed consent to settle a case, and engaging in sexual activity with a client when a consensual sexual relationship did not exist prior to the client-lawyer relationship—Permanent disbarment.*

(No. 2016-0265—Submitted April 5, 2016—Decided October 6, 2016.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2015-015.

_____

**Per Curiam**.

{¶ 1} Respondent, John Barry Frenden of Cleveland, Ohio, Attorney Registration No. 0076200, was admitted to the practice of law in Ohio in 2003. In a July 16, 2015 amended complaint, relator, Cleveland Metropolitan Bar Association, charged Frenden with professional misconduct arising from his neglect of client matters, failure to reasonably communicate with his clients, failure to advise his clients that he did not carry malpractice insurance, failure to reduce contingent-fee agreements to writing, failure to promptly deliver funds that a client was entitled to receive, continuing to represent a client when there was a substantial risk that his ability to represent the client would be limited by his own personal interest, and engaging in a sexual relationship with a client.

{¶ 2} Frenden admitted to some of the facts in an untimely answer to the amended complaint, and the parties stipulated to additional facts. After two days of hearing, a panel of the Board of Professional Conduct issued a report finding that Frenden had engaged in all the charged misconduct and recommended that he be indefinitely suspended from the practice of law. The board adopted the panel's findings of fact and misconduct but recommended that Frenden be permanently disbarred. There are no objections to the board's report or recommendation.

{¶ 3} We adopt the board's findings of fact and conclusions of law and permanently disbar Frenden from the practice of law in Ohio.

### Misconduct

*Count One: The Dubois Matter*

{¶ 4} Diane Dubois retained Frenden to represent her in a personal-injury matter arising from a January 4, 2011 motor-vehicle accident in which a semi backed into the front of a vehicle in which she was a passenger. But Frenden did not reduce their contingent-fee agreement to writing.

{¶ 5} Dubois recorded notes of her appointments and communications with Frenden on her calendar, which showed that on January 10, 2011, he advised her to

see a chiropractor. But she had no further contact with Frenden in 2011. Frenden acknowledged that there was never any question about the tortfeasor's liability for the accident, but he failed to gather adequate information to fully evaluate the nature and seriousness of Dubois's injury claims before he engaged in settlement negotiations.

{¶ 6} In the spring of 2012, an adjuster for the tortfeasor's insurance company attempted to contact Frenden to discuss Dubois's case. When those efforts failed, the adjustor wrote to Frenden and offered to settle Dubois's claims for $28,000, claiming that she had preexisting back injuries. Dubois testified that on July 12, 2012, Frenden told her that he had received a settlement offer of $83,000—but the insurer had made no such offer and Frenden had made no such demand. Dubois's special damages totaled approximately $41,000, and relator's expert testified that the settlement value of her case would have greatly exceeded that value. Frenden admitted that his typical settlement demand would have been four times that amount—or approximately $164,000—yet he claimed that Dubois agreed to settle her case for only $35,000.

{¶ 7} Dubois attempted to discuss the status of the settlement with Frenden numerous times from late July 2012 through early February 2013, but her efforts were unsuccessful. In the interim, Frenden informed the insurer that Dubois was a Medicare recipient. Consequently, on November 28, 2012, the insurer requested that Frenden have Dubois sign and return a consent form authorizing the insurer to report her injuries to the Centers for Medicare & Medicaid Services. Frenden returned the $35,000 settlement check to the insurer on December 18, 2012, and sought to renegotiate the terms of the settlement due to subrogation issues arising from Medicare coverage.

{¶ 8} The insurer refused to renegotiate the settlement, and the statute of limitations for Dubois's claim expired on January 4, 2013. More than a month later, Frenden sent the insurer the authorization for release of medical information,

which was purportedly signed by Dubois. However, Dubois testified that she had never seen the document, that the signature was not hers, and that her name appeared to be misspelled. In a May 9, 2013 letter to the insurer, Frenden stated that he had recently discovered that Dubois was a Medicaid recipient—not a Medicare recipient as he had previously reported. Six days later, he went to Dubois's home and had her sign a general release of all claims. He also had her indorse a second settlement check issued by the insurer, but he did not discuss the amount of the settlement or show her the front of the check.

{¶ 9} Frenden waited more than a month to deposit the settlement check in his client trust account and ignored Dubois's attempts to contact him about the settlement. Nearly one year after Frenden deposited the $35,000 settlement check—and after Dubois filed a grievance against him—he finally released $20,820.42 to her, reimbursed Medicaid $ 8,621.67, and distributed the remaining settlement proceeds to six of her medical providers.

{¶ 10} The panel found that Frenden had failed to provide competent representation to Dubois in violation of Prof.Cond.R. 1.1 (requiring a lawyer to provide competent representation to a client) because he failed to understand the difference between Medicaid and Medicare claims for subrogation purposes, failed to obtain medical records related to her accident, failed to evaluate the seriousness of her claims before negotiating a settlement, and failed to obtain an adequate settlement of her claims. In addition, the panel found that Frenden violated Prof.Cond.R. 1.4(a)(1) (requiring a lawyer to inform the client of any decision or circumstance with respect to which the client's informed consent is required), 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter), 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from the client), 1.4(c) (requiring a lawyer to inform the client if the lawyer does not maintain professional liability insurance and obtain a signed acknowledgment of that notice from the client), and 1.5(c)(1)

(requiring an attorney to have set forth a contingent-fee agreement in a writing signed by the client). Finding that he had forged Dubois's signature on the medical release, had her indorse the settlement check without disclosing the settlement amount, and had delayed distribution of the settlement proceeds, the panel also concluded that Frenden violated Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law).

*Count Two: The Sigler Matters*

Personal Injury

{¶ 11} Diane Sigler retained Frenden to file a personal-injury action on behalf of herself and her minor son for injuries they sustained in a January 2008 motor-vehicle accident. Although Frenden agreed to represent the mother and son on a contingent-fee basis, he failed to reduce that agreement to a signed writing.

{¶ 12} Frenden filed a complaint on January 15, 2010, but erroneously named Sigler's husband, rather than her son, as a plaintiff. Following the final pretrial conference, the court ordered the parties to submit trial briefs, motions in limine, jury interrogatories, and jury instructions no later than seven days before a trial scheduled for March 3, 2011. Opposing counsel also filed a timely motion in limine based upon Frenden's failure to submit an expert report that was necessary to establish causation of the Siglers' injuries. Frenden filed none of the required documents.

{¶ 13} Frenden voluntarily dismissed the case just days before trial without Sigler's knowledge or consent. He refiled the action in February 2012 and once again erroneously named Sigler's husband, rather than her son, as a plaintiff. He failed to appear for a case-management conference and the final pretrial hearing. He also failed to file additional documents as ordered by the court. Frenden then settled the case without Sigler's knowledge or consent on the eve of trial for $5,000—even though Sigler's special damages alone were approximately $11,870.

Frenden admitted that his typical settlement demand would have been close to $46,000.

{¶ 14} Opposing counsel sent Frenden a settlement check and release on November 19, 2012, and asked him not to negotiate the check until the release was signed. But Frenden disregarded that request and deposited the check into his client trust account on February 21, 2013, without obtaining Sigler's signature on the check or on the release. He failed to provide a requested accounting. Sigler filed a malpractice action against Frenden in March 2015.

Domestic-Relations Matter

{¶ 15} In October 2012, Frenden began to represent Sigler in a divorce proceeding initiated by her husband. Sigler paid $1,500 in advance but did not recall having a written fee agreement.

{¶ 16} Frenden did not comply with Sigler's requests that he hire a forensic accountant and file a motion to compel her husband to provide certain documents. He also failed to keep appointments with Sigler and failed to obtain financial information from her in a timely manner. Frenden changed his telephone number during the representation but did not give Sigler the new number. He also failed to file a pretrial statement, a witness list, and a list of exhibits. Although Sigler copied over 725 pages of documents for Frenden to produce in discovery and witnessed him deliver them to opposing counsel, Frenden failed to document the submission of discovery, and opposing counsel denied having received the documents. Fearing that the evidence would be excluded at trial, Sigler personally delivered the documents to opposing counsel and obtained a signed receipt just two days before trial.

{¶ 17} Frenden admitted that he was not prepared for the trial, but the parties and their counsel began settlement negotiations using a draft agreement prepared by the husband's attorney. Sigler ultimately received the marital home with a negotiated net equity of $100,000, assumed liability for all the debt

6

(approximately $143,000), and paid her former husband approximately $72,000. Although her former husband received one-half of her Individual Retirement Account ("IRA"), she did not receive any portion of his IRA. Sigler wanted to indicate on the agreement that her signature was made under duress, but Frenden would not permit her to do so. As they were leaving the courthouse, Frenden mentioned that he had no malpractice insurance.

{¶ 18} The proceeds from Sigler's personal-injury settlement remained in Frenden's client trust account at the time of his disciplinary hearing. Frenden claimed that ownership of the funds was in dispute and that Sigler owed him an additional $10,000 in attorney fees for her divorce.

## Findings of Misconduct

{¶ 19} The panel found that Frenden had failed to competently represent Sigler, neglected her legal matters, failed to keep her reasonably informed about the status of her legal matters, failed to obtain her informed consent to the settlement of her case, failed to notify her in writing that he did not maintain professional liability insurance, and failed to reduce his contingent-fee agreement to writing, thereby violating Prof.Cond.R. 1.1, 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(1), 1.4(a)(3), 1.4(c), and 1.5(c)(1). The panel also found that he violated Prof.Cond.R. 1.15(d) (requiring a lawyer to promptly deliver funds or other property that the client is entitled to receive) by failing to distribute Sigler's settlement proceeds and 8.4(d) (prohibiting conduct that is prejudicial to the administration of justice) by failing to appear at a case-management conference, failing to file a notice of transmission of discovery, and by failing to file a pretrial statement in Sigler's personal-injury matter. Furthermore, the board found that Frenden violated Prof.Cond.R. 8.4(h) by failing to honor opposing counsel's request that he have Sigler sign the release before negotiating the settlement check.

*Count Three: The Divorce and Juvenile Court Proceedings of A.S.*

{¶ 20} Frenden first met A.S. at a club where she worked as an exotic dancer. He began to represent her in a divorce in October 2013. Frenden filed an answer and counterclaim on behalf of A.S., but waited nearly three months to seek court-ordered support for her and her three children—a preteen and infant twins. After the domestic-relations court certified the allocation of parental rights and responsibilities to the juvenile court, Frenden represented A.S. in that proceeding as well.

{¶ 21} Frenden did not advise A.S. in writing that he did not carry professional liability insurance in violation of Prof.Cond.R. 1.4(c). A.S. estimated that she paid Frenden approximately $3,000 for his representation. She also testified that he was always asking for more money, that he asked her to use her government food card to buy him groceries, and that he had her clean his house in exchange for a $20 per hour credit applied to her legal fees. But Frenden did not maintain records of the payments A.S. made or submit any billing invoices to her.

{¶ 22} At one point, Frenden sent A.S. a text in which he threatened to take her twins to Children and Family Services if she did not give him more money. He also took risqué pictures of her and planned to publish them on a calendar, claiming that he would give her half the money and apply the remainder to her attorney fees. A.S. testified that she engaged in sexual relations with Frenden while he was representing her because she felt it was the only way to get him to leave her alone. The panel found that this conduct violated Prof.Cond.R. 8.4(h) and 1.8(j) (prohibiting a lawyer from soliciting or engaging in sexual activity with a client unless a consensual sexual relationship existed prior to the client-lawyer relationship).

{¶ 23} A.S. allowed Frenden's secretary (and former girlfriend), Amber Bell, to take physical custody of her twins in early 2014. A.S. expressed her desire to have the children returned to her as early as March of that year, but Bell

maintained physical custody of the children until after Mothers' Day 2014. Bell also retained an attorney and, for a time, sought permanent custody of the twins. Frenden continued to represent A.S. in her domestic-relations and juvenile cases even after she had requested that Bell return the twins to her, and he failed to advise her how to regain physical custody of her children. The panel found that his continued representation violated Prof.Cond.R. 1.7(a)(2) (providing that a lawyer's continued representation of a client creates a conflict of interest if there is a substantial risk that the lawyer's ability to represent the client will be materially limited by the lawyer's responsibilities to another client, former client, or third person, or by the lawyer's own personal interests).

**{¶ 24}** The panel determined that Frenden had engaged in conduct that was prejudicial to the administration of justice in violation of Prof.Cond.R. 8.4(d) when he failed to appear at A.S.'s May 2014 divorce hearing. Although he claimed that he did not represent her at that time, the docket showed that he did not move to withdraw as her counsel until early July. Moreover, the panel found that Frenden had failed to act with reasonable diligence to obtain temporary support for A.S. in her divorce proceeding, that he had failed to reasonably consult with her about the means by which her objectives were to be accomplished, and that he had failed to appear at a hearing in violation of Prof.Cond.R. 1.3 and 1.4(a)(2).

*Count Four: Client-Trust-Account Violations*

**{¶ 25}** At the time of Frenden's disciplinary hearing, he could not properly account for approximately $18,000 that remained in his client trust account. He admitted that his client-trust-account records were inaccurate and in disarray and that he did not even know what the term "reconciliation" meant. The evidence also shows that in two separate cases, he disbursed more money than he had received. On these facts, the panel concluded that Frenden violated Prof.Cond.R. 1.15(a) (requiring a lawyer to hold funds belonging to a client or third party in a client trust

account separate from his own property and to maintain certain records regarding the funds held in that account).

**Sanction**

**{¶ 26}** When imposing sanctions for attorney misconduct, we consider several relevant factors, including the ethical duties the lawyer violated, relevant aggravating and mitigating factors, and the sanctions imposed in similar cases. *See* Gov.Bar R. V(13)(A).

**{¶ 27}** The panel found as a mitigating factor that Frenden had no prior disciplinary record. *See* Gov.Bar R. V(13)(C)(1). It also found that he had experienced a stressful period in his life after discovering that he was not the father of a child he had believed to be his. He claimed that his sadness made it difficult to perform as an attorney, but he testified that he had never been diagnosed with depression, that he was not under the care of a psychiatrist, and that he remained able to function. Although Frenden's doctor had prescribed Adderall for attention deficit three or four years before the disciplinary hearing, Frenden believed that the treatment had been effective and made no claim that any mental disorder contributed to his misconduct. *See* Gov.Bar R. V(13)(C)(7). Nonetheless, the panel attributed some mitigating effect to the stress that Frenden experienced upon learning that he had not fathered the child.

**{¶ 28}** Aggravating factors found by the panel include Frenden's dishonest and selfish motive; his pattern of misconduct involving multiple offenses; his failure to cooperate in the disciplinary process—as demonstrated by his repeated requests for extensions of time as deadlines approached and his failure to provide complete responses to relator's investigator; his false statements to relator's investigator about his application to obtain professional liability insurance; the harm he caused to vulnerable clients; and his failure to distribute Sigler's settlement proceeds. *See* Gov.Bar R. V(13)(B)(2), (3), (4), (5), (6), (8), and (9).

{¶ 29} The panel considered the sanctions we have imposed in cases involving comparable acts of misconduct. For example, in *Disciplinary Counsel v. Hines*, 133 Ohio St.3d 166, 2012-Ohio-3929, 977 N.E.2d 575, we imposed a 12-month suspension with six months stayed on the license of an attorney who had engaged in a romantic relationship with a vulnerable client and had left her without legal assistance at a critical juncture in her case. And in *Cleveland v. Kodish*, 110 Ohio St.3d 162, 2006-Ohio-4090, 852 N.E.2d 160, we indefinitely suspended an attorney who neglected her clients' bankruptcy cases, ignored their efforts to communicate, simultaneously represented clients with adverse interests without obtaining their informed consent or notifying the bankruptcy court, issued a check from her client trust account that was returned for insufficient funds, and engaged in a consensual sexual relationship with the representative of two of her corporate clients.

{¶ 30} But the panel also considered and found Frenden's conduct most analogous to that in cases in which we permanently disbarred attorneys who failed to competently represent clients, dismissed or settled legal matters without their clients' consent, fraudulently executed settlement documents, either misappropriated or failed to distribute settlement proceeds, and continued to represent clients whose interests conflicted with the interests of the attorney or other clients. *See Lake Cty. Bar Assn. v. Davies*, 144 Ohio St.3d 558, 2015-Ohio-4904, 45 N.E.3d 975; and *Disciplinary Counsel v. Longino*, 128 Ohio St.3d 426, 2011-Ohio-1524, 945 N.E.2d 1040.

{¶ 31} The panel acknowledged that Frenden's misconduct, like that of Davies and Longino, is sufficient to warrant permanent disbarment. However, based upon relator's recommendation that Frenden be indefinitely suspended from the practice of law and the presence of two mitigating factors—the absence of a prior disciplinary record and Frenden's stress upon learning that he was not the father of the child he had believed to be his—the panel recommended that Frenden

be indefinitely suspended from the practice of law with certain conditions on his reinstatement.

{¶ 32} The board adopted the panel's findings of fact and misconduct. Noting the egregious nature of Frenden's conduct, however, which according to the board involved theft and forgery but also harm to vulnerable clients, the board recommended that Frenden be permanently disbarred from the practice of law in Ohio. No one has objected to the board's recommendation.

{¶ 33} The record in this case clearly and convincingly demonstrates that Frenden neglected the legal matters of his clients, failed to provide them with competent representation, settled their personal-injury cases without proper preparation or client authorization and for far less than their estimated worth, forged a client's signature on a medical release, unreasonably delayed the distribution of settlement proceeds to one client, and entirely failed to distribute any settlement proceeds to another. He also failed to advise his clients that his professional liability insurance had been cancelled in November 2011, thus depriving them of a significant avenue for recourse.

{¶ 34} Frenden's trust account records are incomplete and inaccurate. He has misappropriated some client funds—distributing more money than he received in some cases and less in others—and he could not identify who was entitled to receive the more than $18,000 that remained in his client trust account at the time of his disciplinary hearing. Frenden also engaged in a sexual relationship with a client, threatened to turn that client's children over to Children and Family Services if she did not give him more money, arranged for his secretary to take physical custody of the client's young children, and then failed to withdraw from the representation when the client sought to have the children returned to her. We therefore adopt the board's findings of fact and misconduct and agree that the above-described conduct—which began in 2008—manifests a significant

deficiency in Frenden's core ethical obligations of honesty, trustworthiness, diligence, and reliability.

**{¶ 35}** We find that Frenden's misconduct is analogous to that found in *Longino* and *Davies*. And because we find that the numerous aggravating factors present in this case far outweigh the two mitigating factors identified and relied upon by the panel, we agree that permanent disbarment is the proper sanction for Frenden's misconduct.

**{¶ 36}** Accordingly, John Barry Frenden is permanently disbarred from the practice of law in Ohio. Costs are taxed to Frenden.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LANZINGER, FRENCH, and O'NEILL, JJ., concur.

O'DONNELL and KENNEDY, JJ., dissent, and would indefinitely suspend respondent.

_____

McDonald Hopkins L.L.C., R. Jeffrey Pollock, and Kathleen J. Sanz, for relator.

John B. Frenden, pro se.

_____