# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
September 9, 2015 Session Heard at Knoxville

## IN RE: ROBERT LEE VOGEL, BPR #023374

**Review of Board of Professional Responsibility Panel
No. 2014-2341-2-WM**

_____

**No. M2015-00350-SC-BAR-BP – Filed February 4, 2016**

_____

The Board of Professional Responsibility ("Board") initiated disciplinary proceedings against attorney Robert Lee Vogel based upon two unrelated complaints of professional misconduct. A hearing panel ("Panel") determined that Mr. Vogel had violated the Rules of Professional Conduct ("RPC")[1] and entered a judgment suspending Mr. Vogel from the practice of law. The Panel subsequently clarified the sanction in an "Agreed Order Amending the Hearing Panel's Findings of Fact and Conclusions of Law" ("Agreed Order"). The Agreed Order provided that Mr. Vogel would be suspended from the practice of law for one year, with all but thirty days of the suspension to be served on probation. Mr. Vogel's probation would be conditioned upon his compliance with the terms of his Tennessee Lawyer's Assistance Program ("TLAP") agreement, completion of his treatment and counseling program, and weekly attendance at two twelve-step meetings. The Board petitioned this Court for an order enforcing the Panel's judgment and the Agreed Order. Pursuant to Tennessee Supreme Court Rule 9, section 8.4,[2] we determined that the punishment imposed by the Panel appeared inadequate and proposed that it be increased. Mr. Vogel subsequently requested oral argument, which we granted. The issue before the Court is whether the punishment imposed by the Panel is in uniformity with prior disciplinary decisions in this state and appropriate under the circumstances of this case. Upon a thorough review of the record and the applicable law, we hold that it is not. Accordingly, we modify the Panel's judgment to impose a one-year suspension from the practice of law, with the entire suspension to be served on active suspension.

**Tenn. Sup. Ct. R. 9, § 8.4; Judgment of the Hearing Panel Modified**

_____

[1] The Rules of Professional Conduct are stated in Tennessee Supreme Court Rule 8.

[2] This Court adopted substantial changes to Tennessee Supreme Court Rule 9, effective January 1, 2014. Because the events described in this opinion occurred prior to January 1, 2014, all references to Tennessee Supreme Court Rule 9 are to the version of Rule 9 that was in effect before the 2014 revisions.

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which CORNELIA A. CLARK and HOLLY KIRBY, JJ., and CHARLES D. SUSANO, JR., Sp.J., joined. SHARON G. LEE, C.J., not participating.

Julie A. Rice, Knoxville, Tennessee, for the appellant, Robert Lee Vogel.

William C. Moody, Brentwood, Tennessee, for the appellee, Board of Professional Responsibility of the Supreme Court of Tennessee.

**OPINION**

**Factual and Procedural Background**

On July 14, 2014, the Board filed a Petition for Discipline against attorney Robert Lee Vogel based upon two unrelated complaints of professional misconduct. On December 18, 2014, a hearing panel appointed by the Board pursuant to Tennessee Supreme Court Rule 9, section 8.2, convened a hearing on the matter. The Board's proof consisted of four exhibits, while Mr. Vogel's proof consisted of ten exhibits, his personal testimony, and the testimony of four witnesses: Karen Vogel, Mr. Vogel's wife; Cashauna Lattimore, an attorney licensed to practice law in Tennessee; Ted Rice, the Deputy Director of TLAP; and Guy Blackwell, a former Assistant U.S. Attorney. The record with regard to each complaint of misconduct may be summarized as follows:

*The Horn-Brichetto Matter*

Mr. Vogel served as court-appointed counsel for Lisa Horn-Brichetto in a criminal case in Morgan County, Tennessee. On June 13, 2013, while Ms. Horn-Brichetto was free on bond, Mr. Vogel moved to withdraw as counsel based on an alleged conflict of interest with Ms. Horn-Brichetto. In his motion to withdraw, Mr. Vogel maintained that, pursuant to RPC 1.6, he could not disclose the specific nature of the conflict of interest without violating the privilege of confidentiality. The trial court granted Mr. Vogel's motion without conducting a hearing on the matter.

Ms. Horn-Brichetto learned of Mr. Vogel's motion to withdraw through an email sent to her from Mr. Vogel's law office on approximately June 14, 2013. She subsequently wrote a letter to Mr. Vogel asking him to explain his reasons for seeking to withdraw from the representation. Six weeks later, after receiving no response from Mr. Vogel, Ms. Horn-Brichetto sent Mr. Vogel a second letter and sent a copy of this second letter to Judge E. Eugene Eblen, the judge assigned to hear her criminal case. Judge Eblen verbally instructed Mr. Vogel to respond to the second letter. In a letter sent to Ms. Horn-Brichetto, dated August 26, 2013, Mr. Vogel explained his reasons for withdrawing as counsel. Mr. Vogel also sent a copy of this letter to Judge Eblen.

-2-

With regard to the August 26, 2013 letter, the Panel stated in its Findings of Fact and Conclusions of Law:

> Mr. Vogel's letter contained assertions that cast Ms. Horn-Brichetto in a negative light. He provided a copy of this letter to Judge Eblen. Ms. Horn-Brichetto's case was still pending before Judge Eblen at the time Judge Eblen received Mr. Vogel's correspondence. As a result of Judge Eblen reading Mr. Vogel's correspondence that included negative assertions made by Mr. Vogel about Ms. Horn-Brichetto, successor counsel moved to recuse Judge Eblen from her case. Judge Eblen granted successor counsel's Motion to Recuse and removed himself from Ms. Horn-Brichetto's case.
>
> The parties to this proceeding agree that the communication between Mr. Vogel and Judge Eblen contained confidential information. Further, the parties agree that Ms. Horn-Brichetto did not explicitly consent to Mr. Vogel releasing the otherwise confidential information to Judge Eblen.

In its Petition for Discipline, the Board alleged that Mr. Vogel violated RPCs 1.6(a),[3] 1.9(c),[4] and 8.4(a)[5] by divulging information related to his representation of Ms. Horn-Brichetto without Ms. Horn-Brichetto's informed consent and to her disadvantage. In its Findings of Fact and Conclusions of Law, entered on January 15, 2015, the Panel determined that Mr. Vogel "revealed otherwise confidential information of a former client to a third party (Judge Eblen) without his former client's informed consent, and

---

[3] Tenn. Sup. Ct. R. 8, RPC 1.6(a) provides:

(a) A lawyer shall not reveal information relating to the representation's of a client unless:

(1) the client gives informed consent;

(2) the disclosure is impliedly authorized in order to carry out the representation; or

(3) the disclosure is permitted by paragraph (b) or required by paragraph (c).

[4] Tenn. Sup. Ct. R. 8, RPC 1.9(c) provides:

A lawyer who has formerly represented a client in a matter . . . shall not thereafter reveal information relating to the representation or use such information to the disadvantage of the former client unless (1) the former client gives informed consent, confirmed in writing, or (2) these Rules would permit or require the lawyer to do so with respect to a client, or (3) the information has become generally known.

[5] Tenn. Sup. Ct. R. 8, RPC 8.4(a) provides that it is misconduct for a lawyer to "violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another."

without authority under Rule 1.6 of the Rules of Profession [sic] Conduct, to otherwise disclose this information."[6]

In reaching its conclusion, the Panel found that, by sending Judge Eblen a copy of her second letter to Mr. Vogel, Ms. Horn-Brichetto did not give Mr. Vogel her informed consent to reveal confidential information to a third party. The Panel reasoned that "Mr. Vogel recognized that revealing the specific nature of the conflict existing between he and Ms. Horn-Brichetto would require that he reveal confidential – protected – information," noting that "Mr. Vogel affirmatively acknowledged the confidential nature of the information and that Rule 1.6 precluded him from revealing that information in his Motion to Withdraw." The Panel stated that Mr. Vogel could have explained his reasons for withdrawing as counsel to Ms. Horn-Brichetto while also "assuring Judge Eblen that he had fully communicated with [Ms. Horn-Brichetto]." The Panel further stated that Mr. Vogel knew that disclosing client confidences to Judge Eblen was not appropriate or necessary under the RPCs and that Mr. Vogel "understood – but chose to disregard – that prohibition."

The Panel also found that Ms. Horn-Brichetto's second letter to Mr. Vogel did not constitute "allegations in any proceeding concerning a lawyer's representation of the client," which would have permitted Mr. Vogel to reveal information related to his representation of Ms. Horn-Brichetto pursuant to RPC 1.6(b)(5).[7] The Panel reasoned that Ms. Horn-Brichetto's criminal case was not a proceeding concerning Mr. Vogel's representation of her and that "Ms. Horn-Brichetto made no allegations against Mr. Vogel, but instead made an inquiry as to why he had moved to withdraw, an inquiry that Mr. Vogel had for weeks ignored." Additionally, the Panel found that "Mr. Vogel's disclosures caused Ms. Horn-Brichetto injury in that as a direct consequence of Mr. Vogel's disclosure of confidential information, the trial judge presiding over her case was forced to recuse himself and his recusal caused delay in the ultimate disposition of her case."

---

[6] "Informed consent" signifies "the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct." Tenn. Sup. Ct. R. 8, RPC 1.0.

[7] Tenn. Sup. Ct. R. 8, RPC 1.6(b)(5) provides:

A lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary . . . to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client.

### *The Alford Matter*

On August 13, 2012, Mr. Vogel was appointed to represent Ashley Alford in a criminal case in the United States District Court for the Eastern District of Tennessee. After his appointment in Ms. Alford's criminal case, Mr. Vogel also was retained as her counsel in an unrelated civil case arising out of an automobile accident.

In Ms. Alford's deposition, which the Board admitted into evidence at the disciplinary hearing, Ms. Alford explained that she first met Mr. Vogel when he was appointed as her attorney in her criminal case pending in federal court. While Ms. Alford was on pretrial release, which was conditioned on her securing employment, Mr. Vogel hired her to work in his law office. Ms. Alford's duties included filing, cleaning, and "[running] the front when [Mrs. Vogel] . . . would go out of town." She noted that her work schedule varied, but that she tried to work approximately six hours each week.

Mr. Vogel and Ms. Alford engaged in a sexual relationship during the course of Ms. Alford's employment at Mr. Vogel's law office. When asked how the relationship developed, Ms. Alford testified that she began "feeling awkward" with Mr. Vogel from the beginning of the representation but that "it wasn't until [Mr. Vogel] got into the new office that he [] more approached [her] and would tell [her] don't let his feelings towards [her] interfere with him being [her] lawyer because he was just a man and stuff." During her employment at Mr. Vogel's law office, Mr. Vogel would "constantly call[] [her] into his office," where he would pull her into a "blind spot" between the doors and ask for a kiss. Ms. Alford acknowledged that, although she was not attracted to Mr. Vogel, she would kiss him.

Ms. Alford then described how the relationship progressed. Mr. Vogel would ask her to sit on his lap and to work until 8:00 p.m. Ms. Alford began working later hours, but she testified that "it was just . . . so [Mr. Vogel] could hang out with [her] . . . because [she] wasn't doing much." Nobody else would be present when she was in the office with Mr. Vogel after 5:00 p.m. When asked how she reacted when Mr. Vogel would ask for a kiss or for her to sit on his lap, Ms. Alford answered, "I mean, I did it. I mean, I was submissive." She did not express her reluctance to kiss Mr. Vogel or to sit on his lap because Mr. Vogel "held [her] future in his hands." Ms. Alford also noted that she was using drugs during that time.

Ms. Alford testified that she and Mr. Vogel engaged in sexual intercourse on three occasions, each initiated by Mr. Vogel. The first and third sexual encounters took place in Mr. Vogel's office building in "the middle bedroom in the upstairs at the back of the building," and the second sexual encounter took place in Mr. Vogel's actual office. Each instance of sexual intercourse took place after working hours, and Ms. Alford did not think anybody else would be present in the office.

Before the second sexual encounter, Ms. Alford communicated to Mr. Vogel that she did not wish to have intercourse. However, she eventually agreed to do so after Mr. Vogel persisted in asking her to engage in sexual activity. Mr. Vogel "had to have known [she] was upset [and] frustrated." She described the intercourse with Mr. Vogel as "something [she] wanted to get over with" and "not something [she] enjoyed." Ms. Alford engaged in sexual intercourse with Mr. Vogel because he was the "authority figure that [she] felt submissive to." She felt submissive to Mr. Vogel due to his status as her attorney and her unfamiliarity with the charges she faced. She did not want to anger Mr. Vogel because he "held [her] future in his hands."

In order to avoid engaging in any further sexual activity with Mr. Vogel, Ms. Alford asked her friend, Kristen McCollum, to begin working in Mr. Vogel's law office. Ms. Alford stated that Ms. McCollum also was using drugs and was more inclined to engage in sexual relations with Mr. Vogel than she was. Ms. McCollum subsequently began working for Mr. Vogel and entered into a sexual relationship with him. On one occasion, Mrs. Vogel walked in on Mr. Vogel and Ms. McCollum as they were engaging in sexual activity.

On cross-examination, Ms. Alford stated that she believed Mr. Vogel was working for her benefit at the time he was relieved as counsel. Ms. Alford also admitted that she used drugs throughout Mr. Vogel's representation of her and that Mr. Vogel was "very well aware that [she] was using." When asked how she knew that Mr. Vogel was aware of her drug use, she explained that Mrs. Vogel informed him of Ms. Alford's drug use after Ms. Alford's probation officer called Mrs. Vogel. According to Ms. Alford, Mr. Vogel then told Ms. McCollum, who informed Ms. Alford that her probation officer suspected that she was using drugs. Ms. Alford stated, "I mean [Mr. Vogel] wasn't stupid . . . . If I was sick and I didn't feel like coming in, he knew that. If I needed money upfront, he knew that. . . . He was very well aware that I was on drugs."

When asked about her second sexual encounter with Mr. Vogel, in which she expressed her reluctance to engage in the sexual activity, Ms. Alford explained that Mr. Vogel "hounded [her]" until she agreed to participate and that his persistence seemed more like begging than demanding. Mr. Vogel never told her that he would not represent her if she refused to have sexual intercourse with him. Ms. Alford acknowledged that she and Mr. Vogel would send text messages to one another and that she may have flirted with him in those messages.

At his disciplinary hearing, Mr. Vogel admitted that he engaged in a sexual relationship with Ms. Alford during the course of his representation. He stated that the relationship was not something he was proud of and not something he would do again. He "worked very hard for Ms. Alford" and, other than engaging in a sexual relationship with her, did not deviate from the general course of action he would take in defending clients facing drug charges in federal court. Mr. Vogel asserted that he never told Ms.

-6-

Alford that she was required to have sexual intercourse with him. He did not insist that Ms. Alford continue the sexual relationship after she ended it. He also continued to represent her to the best of his ability. Mr. Vogel attempted to talk to Ms. Alford about a consensual relationship and his role as her attorney, but he "didn't do it formally." Specifically, he stated:

> This is not something that just, boom, burst on the scene one day, and – but I told her several times that my representation of her and our relationship had nothing to do with each other. And if she said no, it wouldn't matter. I would continue to represent her, that there was nothing – there was no contingency involved, and, I mean, she mentioned it twice in her deposition that I talked to her about that.

After learning of the sexual relationship between Mr. Vogel and Ms. Alford,[8] the district court relieved Mr. Vogel as counsel and initiated disciplinary proceedings against him. The district court appointed Mr. Blackwell to investigate and prosecute the matter on its behalf. Mr. Blackwell testified that his investigation into the relationship between Mr. Vogel and Ms. Alford lasted approximately three months. Mr. Vogel was cooperative throughout the investigation, was remorseful, acknowledged his mistakes, and "explained . . . the steps he had taken on his own to correct those mistakes and that behavior." After concluding his investigation, Mr. Blackwell did not recommend that Mr. Vogel be banned from the practice of law in the district court. Mr. Vogel testified that he ultimately was not suspended, but he had agreed to withdraw from the district court's Criminal Justice Act lawyer-appointment panel for a period of time. At the time of his disciplinary hearing, Mr. Vogel had approximately six cases pending in the district court.

Before the district court learned of his sexual relationship with Ms. Alford, Mr. Vogel contacted the Board to ask if he needed to report his conduct. Based on his conversation with the Board, Mr. Vogel did not self-report. Mr. Vogel stated that he had not denied his behavior or actions to anyone and had cooperated with the Board and the district court since the discovery of his relationship with Ms. Alford. Mr. Vogel did not have a prior disciplinary record.

Much of the proof elicited during the course of the disciplinary hearing concerned Mr. Vogel's actions after his sexual relationship with Ms. Alford had been discovered. In

---

[8] In her deposition, Ms. Alford explained that the court knew of the relationship because she had disclosed it to the DEA agent that was working on her case. On cross-examination, Ms. Alford acknowledged that she engaged in a sexual relationship with the DEA agent. She stated that she still was using drugs at that time. Ms. Alford denied engaging in sexual relationships with the DEA agent and Mr. Vogel because she thought they might be able to help her "get[] a better deal" in her criminal case.

July of 2013, Mr. Vogel attended the Trial Lawyers College[9] in Wyoming, where a psychologist conducting a "psychodrama" in which Mr. Vogel participated suggested that Mr. Vogel might have a sexual addiction. Upon his return from the Trial Lawyers College, Mr. Vogel began to attend TLAP meetings and began to participate in weekly counseling with Dr. Allan Dunkel, a psychologist in New Jersey that previously had counseled him through marital issues.

On October 29, 2013, Mr. Rice, the Deputy Director of TLAP, consulted with Mr. Vogel regarding his behavioral health issues. Mr. Rice testified that, at the time of the consultation, "[i]t became very clear that [Mr. Vogel] was in crisis and spiraling downward." He stated that Mr. Vogel was "at a place of real[] surrender in that [he] was really out of solutions" with regard to his impulse control disorder and that he found Mr. Vogel to be remorseful. Mr. Rice recommended that Mr. Vogel seek residential care.[10] On November 5, 2013, Mr. Vogel entered into a preliminary monitoring agreement with TLAP, which provided that Mr. Vogel would participate in inpatient treatment at the Recovery Ranch[11] and aftercare with TLAP.

On November 11, 2013, Mr. Vogel began his thirty-five-day inpatient treatment at the Recovery Ranch. Mrs. Vogel testified that, during Mr. Vogel's inpatient treatment, she attended a weekend retreat at the Recovery Ranch for the spouses of those receiving treatment. Mrs. Vogel stated that she had been supportive of Mr. Vogel throughout his counseling and meetings and that she remained supportive of him. Mr. Vogel's discharge plan from the Recovery Ranch referred him to Ebenezer Counseling Services for aftercare treatment for his sexual addiction.

---

[9] As evidenced by a review of its website, the Trial Lawyers College offers programs designed to train and educate trial lawyers. See Gerry Spence Trial Lawyers College, http://triallawyerscollege.org/Default.aspx.

[10] Mr. Rice received an undergraduate degree in psychology and a graduate degree in psychology and counseling. He testified that sexual addiction is a treatable condition but "should be addressed over the lifetime of the individual." Mr. Rice explained that sexual addiction often involves "an unresolved trauma that[] [has] occurred" and that the course of treatment seeks to address that trauma. "Sexual addiction" is synonymous with "sexual compulsivity," which is a type of impulse control disorder according to the diagnostic statistical manual. Impulse control disorder is "recognized in the diagnostic statistical manual as a stand-alone illness, mental health illness similar to alcoholism" and is treated by many reputable treatment facilities. Mr. Rice also noted that the recovery rate for impulse control disorder is as good as, if not slightly better than, the recovery rate for alcoholism.

[11] Mr. Vogel offered into evidence a letter from Nina Hayes, an Admissions Coordinator at the Recovery Ranch, which indicated that the Recovery Ranch is a recovery and healing center that is licensed by The State of Tennessee Department of Mental Health and "CARF accredited." The letter also indicated that Mr. Vogel was admitted to the Recovery Ranch on November 11, 2013, where he received "clinical and therapeutic treatment for co-occurring disorders."

Mr. Rice testified that Mr. Vogel entered into a formal TLAP monitoring agreement in the spring of 2014, which remained effective at the time of Mr. Vogel's disciplinary hearing. This agreement required Mr. Vogel to undergo random urine and drug tests, to abstain from drinking alcohol and using drugs, to attend at least three self-help support groups each week, and to maintain a counseling relationship. Further, Mr. Vogel was assigned a TLAP peer monitor, Randy Sykes, with whom he spoke over the phone each week and met with each month. According to Mr. Rice, at the time of the hearing, Mr. Vogel was "compliant with all the elements of the monitoring agreement and ha[d] maintained strict compliance since entering into that agreement." Mr. Rice believed that it was unlikely that Mr. Vogel would again engage in the conduct that brought him before the Panel and that Mr. Vogel was not a threat to the public.

Mr. Vogel testified that he was still in recovery at the time of the hearing. He was attending three meetings each week, participating in weekly counseling, participating in marriage counseling with Mrs. Vogel every other week, and meeting with his TLAP peer monitor each month. He also was filing a monthly self-report and an attendance report regarding the meetings he had attended with TLAP.

Cashauna Lattimore testified that she had been an attorney at Mr. Vogel's law firm since 2012. Ms. Lattimore remembered Ms. Alford being in the office "once or twice" performing tasks such as vacuuming and filing, but not on a regular basis. She did not suspect a sexual relationship between Mr. Vogel and Ms. Alford because she "never really saw them in the office together." Ms. Lattimore also stated that Ms. Alford was "usually working after . . . office hours" and would only be in the office for a couple of hours each time.

Ms. Lattimore's opinion regarding Mr. Vogel's performance as an attorney had not changed after learning of his conduct in the Horn-Brichetto matter and the Alford matter, and she would still recommend him as a criminal defense attorney. Ms. Lattimore stated that Mr. Vogel was honest with her about his relationship with Ms. Alford and never "kept her in the dark about the details of the federal court investigation." Mr. Vogel explained to her that he wanted her professional reputation to remain intact and that he did not want his actions to reflect negatively upon her. Ms. Lattimore believed that Mr. Vogel was remorseful and felt that, since the time he had begun receiving treatment, he had "change[d] for the better." Additionally, after learning of Mr. Vogel's relationship with Ms. Alford, Ms. Lattimore and Mrs. Vogel established several safeguards for Mr. Vogel's law practice. These safeguards included Ms. Lattimore's working later hours, Mr. Vogel's refraining from meeting with female clients alone, and Mr. Vogel's not staying late at the office unless she was still present. Mrs. Vogel testified that they also changed the configuration of Mr. Vogel's law office and reverted to office guidelines that had "slipped through the cracks because of responsibilities that [Mrs. Vogel] had at home."

In its Petition for Discipline, the Board alleged that Mr. Vogel violated RPCs 1.7(a)(2)[12] and 8.4(a) by engaging in a sexual relationship with Ms. Alford that created a significant risk that his representation of Ms. Alford would be materially limited by his personal interests. The Panel determined that Mr. Vogel violated RPC 1.7, finding that:

> Mr. Vogel engaged in sexual advances directed at his young, drug using, court-appointed client who was under federal indictment for drug related charges. Those advances included "begging" his client to engage in sexual intercourse with him and, in fact, did result in the client having sexual intercourse with Mr. Vogel. After engaging in sexual intercourse with Mr. Vogel, the proof shows that Ms. Alford told Mr. Vogel she did not want to engage in any further sexual intercourse, but Mr. Vogel persisted in asking her for further sexual favors resulting in sexual intercourse with the client on two additional occasions. Ms. Alford told Mr. Blackwell that she acquiesced to the additional sexual activity because Mr. Vogel held her future in his hands.

The Panel found that Ms. Alford "appeared to be at best a 'consenting, but reluctant participant in the relationship'" and found that Mr. Vogel unfairly exploited his fiduciary role. Additionally, the Panel concluded that Mr. Vogel's conduct created a concurrent conflict of interest and that "his behavior created a significant risk that his representation of Ms. Alford – a vulnerable, court-appointed client – was materially limited by his personal interests."

## Punishment Imposed by the Panel

With regard to the Horn-Brichetto matter, the Panel determined that Mr. Vogel should be suspended from the practice of law for twelve months. However, the Panel concluded that Mr. Vogel's suspension should be served on probation, opining that "in light of Mr. Vogel's remedial actions there exists little likelihood that he will harm the public during the period of rehabilitation." See Tenn. Sup. Ct. R. 9, § 8.5 (providing that "the imposition of a suspension for a fixed period . . . may be suspended in conjunction

---

[12] Tenn. Sup. Ct. R. 8, RPC 1.7(a) provides:

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

(1) the representation of one client will be directly adverse to another client; or

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

-10-

with a fixed period of probation"). With regard to the Alford matter, a majority of the Panel concluded that Mr. Vogel should be suspended from the practice of law for twelve months and that, pursuant to Tennessee Supreme Court Rule 9, section 8.5, all but thirty days of the suspension should be served on probation.[13] The majority reasoned that, in light of Mr. Vogel's remedial actions, it was not likely that he would harm the public during his rehabilitation period. The majority recommended that Mr. Vogel's suspensions be served concurrently and that his probation be conditioned on his compliance with the requirements and obligations imposed by TLAP and his compliance with the sanctions imposed by the district court.

On February 3, 2015, the Board filed a motion to alter or amend the judgment of the Panel, requesting that the Panel amend its judgment to impose a single suspension as punishment for Mr. Vogel's misconduct in the Alford matter and the Horn-Brichetto matter. In its motion, the Board stated that the parties had agreed to impose a one-year suspension, with thirty days to be served on active suspension and the remainder to be served on probation. The Board also notified the Panel that the parties agreed that the Panel's judgment should be amended to specify the conditions of Mr. Vogel's probation. On February 6, 2015, the Panel entered an Agreed Order, which imposed the following sanction on Mr. Vogel:

1. As a result of Mr. Vogel's misconduct with regard to Ms. Horn-Brichetto and Ms. Alford, the Hearing Panel finds that Mr. Vogel should be suspended for twelve (12) months with all but thirty (30) days of that suspension to be suspended with the remaining eleven (11) months to be served on probation.

2. The conditions of probation are as follows:

   a) Mr. Vogel has entered into a Monitoring Agreement with the Tennessee Lawyer's Assistance Program ("TLAP") and shall continue to comply with the terms and conditions of the TLAP agreement for the period of probation imposed herein.

   b) For the period of probation, Mr. Vogel shall continue and complete treatment and counseling through Ebenezer Counseling Services and comply with any aftercare recommendations.

---

[13] The dissenting panel member concurred with the findings of fact, conclusions of law, and punishment for Mr. Vogel's misconduct in the Horn-Brichetto matter. However, he did not agree with the punishment for Mr. Vogel's misconduct in the Alford matter, as he would not have required Mr. Vogel to serve thirty days of the suspension on active suspension.

c) For the period of probation, Mr. Vogel will attend at least two (2) appropriate twelve-step meetings weekly and, upon request by the Board, provide written verification by the sponsor of such attendance.

## The Board's Petition for Order of Enforcement

Mr. Vogel did not appeal the decision of the hearing panel. See Tenn. Sup. Ct. R. 9, § 1.3 (providing that a respondent-attorney or the Board may seek review of a hearing panel's judgment). On February 20, 2015, the Board filed a Petition for Order of Enforcement, seeking approval of the Panel's decision and enforcement of the discipline imposed by the Panel. See id. § 8.4. On March 19, 2015, this Court, pursuant to Tennessee Supreme Court Rule 9, section 8.4, entered an order proposing to increase Mr. Vogel's punishment after finding that the punishment imposed by the Panel seemed inadequate. On April 9, 2015, Mr. Vogel filed a brief and requested oral argument. See id. The Board filed a reply brief on April 23, 2015. See id. On April 29, 2015, we granted Mr. Vogel's request for oral argument. See id.

## Standard of Review

The Supreme Court of Tennessee is the source of authority of the Board of Professional Responsibility and all of its functions. Long v. Bd. of Prof'l Responsibility, 435 S.W.3d 174, 178 (Tenn. 2014). As a part of our duty to regulate the practice of law in this state, we bear the ultimate responsibility for enforcing the rules governing the legal profession. Hughes v. Bd. of Prof'l Responsibility, 259 S.W.3d 631, 640 (Tenn. 2008). We examine disciplinary judgments under "[the] Court's inherent power [and] essential and fundamental right to . . . administer [the] rules pertaining to the licensing . . . of attorneys." Id. (quoting In re Burson, 909 S.W.2d 768, 773 (Tenn. 1995)).

Tennessee Supreme Court Rule 9, section 8, governs the process through which the Board investigates attorney disciplinary matters. See Tenn. Sup. Ct. R. 9, § 8. When the Board elects to bring formal charges against an attorney, the matter is assigned to a hearing panel. See id. § 8.2. The hearing panel then conducts a hearing before entering its findings and judgment in the form of a final decree of a trial court. See id. §§ 8.2-8.3. In its judgment, the hearing panel may impose discipline if it has determined that the attorney committed professional misconduct.[14] See id. § 8.4.

---

[14] The hearing panel may impose a disbarment, suspension, or public censure as punishment for professional misconduct. See id. § 8.4. "In the discretion of the hearing panel, the imposition of a suspension for a fixed period of time (Section 4.2) may be suspended in conjunction with a period of probation ordered pursuant to Section 8.5." Id. The hearing panel also may order restitution. Id. However, the hearing panel may not impose a temporary suspension, private reprimand, or private informal admonition following a formal disciplinary proceeding. Id.

This matter is before the Court pursuant to Tennessee Supreme Court Rule 9, section 8.4, which requires this Court to review any hearing panel judgment imposing a disbarment or suspension in excess of three months if no appeal has been perfected within the time allowed. See id. We review the Panel's judgment "with a view to attaining uniformity of punishment throughout the state and appropriateness of punishment under the circumstances of each particular case." Id. If we find that the punishment appears inadequate or excessive, we must:

> issue an order advising the Board and the respondent that [we] propose[] to increase or to decrease the punishment. If the Court proposes to increase the punishment, the respondent attorney shall have twenty (20) days from the date of the order to file a brief and request oral argument. . . . Reply briefs shall be due within twenty (20) days of the filing of the brief of the party upon whom the burden of persuasion rests. If oral argument is requested it shall be promptly granted. Upon termination of such proceedings as are requested the Court may modify the judgment of the hearing panel . . . in such manner as it deems appropriate.

Id.

## Analysis

The issue before the Court is whether the punishment imposed by the Panel is appropriate under the circumstances of this case and in uniformity with prior disciplinary decisions in this state involving similar circumstances. We first review whether the Panel correctly concluded that Mr. Vogel violated the Rules of Professional Conduct and was subject to discipline.

### *Attorney Misconduct*

With regard to the Horn-Brichetto matter, the Panel determined that "Mr. Vogel revealed otherwise confidential information of a former client to a third party (Judge Eblen) without his former client's informed consent, and without authority under Rule 1.6 of the Rules of Profession [sic] Conduct, to otherwise disclose this information." We agree.

RPC 1.9(c) provides:

(c) A lawyer who has formerly represented a client in a matter . . . shall not thereafter reveal information relating to the representation or use such information to the disadvantage of the former client unless (1) the former client gives informed consent, confirmed in writing, or (2) these Rules

-13-

would permit or require the lawyer to do so with respect to a client, or (3) the information has become generally known.

Tenn. Sup. Ct. R. 8, RPC 1.9(c). "Informed consent" is defined as "the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct." Tenn. Sup. Ct. R. 8, RPC 1.0.

We agree with the Panel that, by sending a copy of her letter to Judge Eblen, Ms. Horn-Brichetto did not give Mr. Vogel her informed consent to disclose confidential information. The record is devoid of evidence showing that Mr. Vogel had communicated adequate information concerning the risks of disclosing confidential information to Judge Eblen before Ms. Horn-Brichetto sent Judge Eblen a copy of her letter to Mr. Vogel. Moreover, Ms. Horn-Brichetto's letter simply requested an explanation from Mr. Vogel. It did not disclose any information related to that disclosed by Mr. Vogel in his response letter. Thus, Ms. Horn-Brichetto's letter could not have constituted informed consent as defined by RPC 1.0. Additionally, the information Mr. Vogel revealed to Judge Eblen was not information that had become generally known. See Tenn. Sup. Ct. R. 8, RPC 1.9(c)(3). Therefore, under RPC 1.9(c)(2), Mr. Vogel only could have revealed such information if the RPCs permitted or required him to do so. See Tenn. Sup. Ct. R. 8, RPC 1.9(c)(2).

RPC 1.6(b) lists situations in which an attorney *is permitted* to disclose information relating to the representation of a client, while RPC 1.6(c) lists situations in which an attorney *must* disclose such information. See Tenn. Sup. Ct. R. 8, RPC 1.6(b)-(c). Among these provisions, only RPC 1.6(b)(5) is relevant to the present case. RPC 1.6(b)(5) provides that

> [a] lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary . . . to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client.

Tenn. Sup. Ct. R. 8, RPC 1.6(b)(5). The Panel found that Ms. Horn-Brichetto's letters to Mr. Vogel did not constitute "allegations in any proceeding concerning a lawyer's representation of the client." Id. The record supports the Panel's conclusions. First, as the Panel observed, Ms. Horn-Brichetto's criminal case concerned the criminal charges she faced rather than Mr. Vogel's representation of her. Second, Ms. Horn-Brichetto's letters to Mr. Vogel are better characterized as "inquiries" rather than "allegations," as Ms. Horn-Brichetto merely sought an explanation as to why Mr. Vogel withdrew as

-14-

counsel. Such inquiries do not authorize an attorney to disclose confidential information relating to the representation of a client. See id.

Thus, the Panel correctly found that Mr. Vogel violated RPC 1.9 and was subject to discipline with regard to the Horn-Brichetto matter.

With regard to the Alford matter, the Panel determined that Mr. Vogel violated RPC 1.7 by engaging in conduct that created a concurrent conflict of interest between Ms. Alford and him and a significant risk that his representation of Ms. Alford would be materially limited by his personal interests. Again, we agree.

RPC 1.7(a) prohibits lawyers from representing a client if the representation involves a concurrent conflict of interest. See Tenn. Sup. Ct. R. 8, RPC 1.7(a). Such a conflict exists if, inter alia, "there is a significant risk that the representation of one or more clients will be materially limited by . . . a personal interest of the lawyer." Tenn. Sup. Ct. R. 8, RPC 1.7(a)(2). However, RPC 1.7(b) permits a lawyer to represent a client notwithstanding the existence of a concurrent conflict of interest if:

> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>
> (2) the representation is not prohibited by law;
>
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
>
> (4) each affected client gives informed consent, confirmed in writing.

Tenn. Sup. Ct. R. 8, RPC 1.7(b).[15]

The record demonstrates that a concurrent conflict of interest existed between Mr. Vogel and Ms. Alford. During the course of Mr. Vogel's representation of Ms. Alford, he made sexual advances towards her and engaged in sexual intercourse with her in his office on three occasions. Before the second occasion, Ms. Alford told Mr. Vogel that she did not wish to have sexual intercourse, but she agreed to engage in such activity after Mr. Vogel pleaded with her to do so. In her deposition, Ms. Alford described Mr. Vogel as the "authority figure that [she] felt submissive to" and testified that Mr. Vogel "held [her] future in his hands."

---

[15] RPC 1.7(c) addresses the representation of multiple clients in the same criminal or juvenile delinquency proceeding, which is not applicable to this case.

-15-

Moreover, Mr. Vogel did not satisfy the enumerated requirements of RPC 1.7(b), as he did not obtain Ms. Alford's informed consent, confirmed in writing, to his continued representation. Mr. Vogel testified that he informally attempted to speak with Ms. Alford about a consensual relationship and his role as her attorney and that he told Ms. Alford several times that his role as her attorney and his feelings for her had nothing to do with one another. Ms. Alford testified that Mr. Vogel would tell her not to "let his feelings towards [her] interfere with him being [her] lawyer because he was just a man and stuff." However, the record does not indicate that Mr. Vogel ever made Ms. Alford aware of the "relevant circumstances and of the material and reasonably foreseeable ways that the conflict could have adverse effects" on her interests. RPC 1.7 cmt. [18]; see RPC 1.0(e). Additionally, despite the foregoing testimony, Mr. Vogel admitted in his Answer to the Petition for Discipline that he did not explain to Ms. Alford the potential impact a sexual relationship between them could have on the attorney-client relationship. He further admitted that he did not obtain Ms. Alford's informed consent to such a relationship.

Thus, the Panel correctly found that Mr. Vogel violated RPC 1.7 and was subject to discipline with regard to the Alford matter.

### *Appropriateness of Punishment*

We next address whether the punishment imposed by the Panel is appropriate under the circumstances of Mr. Vogel's case. See Tenn. Sup. Ct. R. 9, § 8.4. This Court looks to the American Bar Association's Standards for Imposing Lawyer Sanctions ("ABA Standards") in determining the appropriate punishment for an attorney's misconduct. See Bailey v. Bd. of Prof'l Responsibility, 441 S.W.3d 223, 232 (Tenn. 2014); Lockett v. Bd. of Prof'l Responsibility, 380 S.W.3d 19, 26 (Tenn. 2012). The ABA Standards are designed to promote: "(1) consideration of all factors relevant to imposing the appropriate level of sanction in an individual case; (2) consideration of the appropriate weight of such factors in light of the stated goals of lawyer discipline; [and] (3) consistency in the imposition of disciplinary sanctions." ABA Standard 1.3. These standards serve as "guideposts" for determining the appropriate punishment rather than "rigid rules that dictate a particular outcome." Hyman v. Bd. of Prof'l Responsibility, 437 S.W.3d 435, 447 (Tenn. 2014) (citing Lockett, 380 S.W.3d at 26; Maddux v. Bd. of Prof'l Responsibility, 409 S.W.3d 613, 624-25 (Tenn. 2013)); see Bailey, 441 S.W.3d at 232. ABA Standard 3.0 provides that four factors should be considered in imposing punishment for an attorney's misconduct: "the duty violated; . . . the lawyer's mental state; . . . the potential or actual injury caused by the lawyer's misconduct; and . . . the existence of aggravating or mitigating factors." ABA Standard 3.0; see Lockett, 380 S.W.3d at 26. The ABA Standards suggest the appropriate baseline sanction, and aggravating and mitigating factors may justify an increase or reduction in the degree of punishment to be imposed. Bd. of Prof'l Responsibility v. Maddux, 148 S.W.3d 37, 41 (Tenn. 2004); see also ABA Standard 9.21 ("[A]ggravating circumstances are any

considerations or factors that may justify an increase in the degree of discipline to be imposed."); ABA Standard 9.31 ("[M]itigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed.").

Mr. Vogel asks that the Court approve the Panel's judgment and the Agreed Order. He submits that there are "no grounds present which would justify this Court increasing his time of active suspension especially based on current precedents from the Board and approved by this Court." Mr. Vogel asserts that the Panel "considered all the evidence, carefully weighed it, and made a decision with a view toward its responsibilities and this Court's precedents as well as protection of the public." The Board argues that Mr. Vogel's misconduct could justify a greater punishment than that imposed by the Panel, stating that Mr. Vogel "preyed on [Ms. Alford,] a vulnerable client."

## A. Appropriate Baseline Sanction

With regard to the Horn-Brichetto matter, the Panel found that Mr. Vogel revealed confidential information regarding his representation of Ms. Horn-Brichetto without her informed consent and without authority under RPC 1.6(b)(5) and that Mr. Vogel's disclosure of confidential information prejudiced Ms. Horn-Brichetto. ABA Standard 4.2 suggests baseline sanctions for an attorney's improper revelation of information relating to representation of a client:

4.21 Disbarment is generally appropriate when a lawyer, with the intent to benefit the lawyer or another, knowingly reveals information relating to [the] representation of a client not otherwise lawfully permitted to be disclosed, and this disclosure causes injury or potential injury to a client.

4.22 Suspension is generally appropriate when a lawyer knowingly reveals information relating to the representation of a client not otherwise lawfully permitted to be disclosed, and this disclosure causes injury or potential injury to a client.

4.23 Reprimand is generally appropriate when a lawyer negligently reveals information relating to [the] representation of a client not otherwise lawfully permitted to be disclosed[,] and this disclosure causes injury or potential injury to a client.

4.24 Admonition is generally appropriate when a lawyer negligently reveals information relating to [the] representation of a client not otherwise lawfully permitted to be disclosed[,] and this disclosure causes little or no actual or potential injury to a client.

The Panel applied ABA Standard 4.22 in determining that Mr. Vogel should be suspended from the practice of law for his misconduct with regard to the Horn-Brichetto matter. Mr. Vogel contends that there was no proof presented to the Panel demonstrating that his disclosure was anything other than negligent.[16] He states that, at the time he sent his letter to Ms. Horn-Brichetto and Judge Eblen, he was under personal stress because he had begun the rehabilitation process on account of his conduct in the Alford matter.

In Mr. Vogel's motion to withdraw as counsel, he maintained that a conflict of interest existed between Ms. Horn-Brichetto and him. He also asserted that he could not disclose the specific nature of the conflict of interest without revealing confidential information and that RPC 1.6 prohibited him from revealing such information. Despite noting this in his original motion, Mr. Vogel then provided Judge Eblen a copy of his response to Ms. Horn-Brichetto's letters, in which he spelled out the very reasons for withdrawing from the representation that he indicated in his motion that he could not disclose. Thus, it is evident that Mr. Vogel was fully aware that sending a copy of the letter to Judge Eblen would result in revealing information related to his representation of Ms. Horn-Brichetto.

The Panel also found that Mr. Vogel's disclosure of confidential information caused Ms. Horn-Brichetto injury,[17] as it resulted in Judge Eblen's recusal and a delay in the disposition of Ms. Horn-Brichetto's criminal case. Mr. Vogel contends that there was no proof presented to the Panel evidencing that his revelation of confidential information caused harm to Ms. Horn-Brichetto. Specifically, he asserts that "Judge Eblen is no longer in a position of authority over [Ms. Horn-Brichetto's] case; [Ms. Horn-Brichetto] remained free on bond; and the new judge is presumably unfamiliar with anything surrounding this disciplinary complaint or the prior representation by Mr. Vogel." He also notes that successor counsel for Ms. Horn-Brichetto did not file the motion to recuse Judge Eblen for nearly one year after Mr. Vogel's disclosure of confidential information.

The record supports a finding that Mr. Vogel's misconduct caused Ms. Horn-Brichetto injury. As the Panel found, Mr. Vogel's revelation of confidential information directly resulted in Judge Eblen's recusal, which delayed the ultimate disposition of Ms.

[16] Under the ABA Standards, "knowledge" is defined as "the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." The ABA Standards define "negligence" as "the failure of a lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation."

[17] The ABA Standards define "injury" as "harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct. The level of injury can range from 'serious' injury to 'little or no' injury." "Potential injury" is defined as "harm to a client, the public, the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct."

Horn-Brichetto's criminal proceedings. While the fact that Ms. Horn-Brichetto remained free on bond during her criminal proceedings may render her injury less severe, it does not prove that Ms. Horn-Brichetto did not suffer any harm at all. Additionally, we note that the Panel could have concluded that Mr. Vogel's revelation of confidential information caused potential injury to Ms. Horn-Brichetto, as it was reasonably foreseeable at the time of Mr. Vogel's revelation that, but for Judge Eblen's recusal, his disclosure of confidential information likely would have compromised the integrity of Ms. Horn-Brichetto's criminal case.

Because Mr. Vogel knowingly disclosed confidential information to Judge Eblen causing injury to Ms. Horn-Brichetto, his conduct meets the requirements of ABA Standard 4.22. Thus, we agree with the Panel that a suspension is the appropriate baseline sanction for Mr. Vogel's conduct with regard to the Horn-Brichetto matter.

With regard to the Alford matter, the Panel found that Mr. Vogel violated RPC 1.7 by engaging in conduct that created a concurrent conflict of interest and a significant risk that his representation of Ms. Alford would be materially limited by his personal interests. ABA Standard 4.3 suggests baseline sanctions for cases involving conflicts of interest:

> 4.31 Disbarment is generally appropriate when a lawyer, without the informed consent of client(s):
>
> > (a) engages in representation of a client knowing that the lawyer's interests are adverse to the client's with the intent to benefit the lawyer or another, and causes serious or potentially serious injury to the client; or
> >
> > (b) simultaneously represents clients that the lawyer knows have adverse interests with the intent to benefit the lawyer or another, and causes serious or potentially serious injury to a client; or
> >
> > (c) represents a client in a matter substantially related to a matter in which the interests of a present or former client are materially adverse, and knowingly uses information relating to the representation of a client with the intent to benefit the lawyer or another, and causes serious or potentially serious injury to a client.
>
> 4.32 Suspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client.

4.33 Reprimand is generally appropriate when a lawyer is negligent in determining whether the representation of a client may be materially affected by the lawyer's own interests, or whether the representation will adversely affect another client, and causes injury or potential injury to a client.

4.34 Admonition is generally appropriate when a lawyer engages in an isolated instance of negligence in determining whether the representation of a client may be materially affected by the lawyer's own interests, or whether the representation will adversely affect another client, and causes little or no actual or potential injury to a client.

The Panel applied ABA Standard 4.32 in determining that Mr. Vogel should be suspended from the practice of law for his misconduct with regard to the Alford matter. Mr. Vogel acknowledges that a suspension could be applicable under the facts of his case, but he maintains that the Panel appropriately considered and imposed the length of his suspension. He submits that the evidence shows a negligent determination of a conflict of interest rather than a knowing determination. See ABA Standards, Definitions (defining "knowledge" and "negligence"). In support of his argument, Mr. Vogel cites his "mental illness struggles in conjunction with rehabilitation efforts as well as the comments to [RPC 1.7] wherein sex with clients is not specifically prohibited."[18] Mr.

---

[18] The comments to RPC 1.7 discuss sexual relations between an attorney and client:

[12] The relationship between lawyer and client is a fiduciary one in which the lawyer occupies the highest position of trust and confidence. Because of this fiduciary duty to clients, combining a professional relationship with any intimate personal relationship may raise concerns about conflict of interest, impairment of the judgment of both lawyer and client, and preservation of attorney-client privilege. These concerns may be particularly acute when a lawyer has a sexual relationship with a client. Such a relationship may create a conflict of interest under paragraph (a)(2) or violate other disciplinary rules, and it generally is imprudent even in the absence of an actual violation of these Rules.

[12a] Especially when the client is an individual, the client's dependence on the lawyer's knowledge of the law is likely to make the relationship between the lawyer and client unequal. A sexual relationship between lawyer and client can involve unfair exploitation of the lawyer's fiduciary role and thereby violate the lawyer's basic obligation not to use the trust of the client to the client's disadvantage. In addition, such a relationship presents a significant risk that the lawyer's emotional involvement will impair the lawyer's independent professional judgment. Moreover, a blurred line between the professional and personal relationships may make it difficult to predict the extent to which communications will be protected by the attorney-client privilege, because communications are protected by privilege only when they are imparted in the context of the client-lawyer relationship. The client's own emotional involvement may make it impossible for the client to give informed consent to these risks.

Vogel states that he insufficiently attempted to inform Ms. Alford of his feelings for her and that no proof of actual harm to Ms. Alford was presented to the Panel. See ABA Standards, Definitions (defining "injury" and "potential injury").

We agree with the Panel that Mr. Vogel knew that a conflict of interest existed between Ms. Alford and him and that Mr. Vogel did not fully disclose the possible effect of that conflict to Ms. Alford. The record shows that, during the course of Mr. Vogel's representation of Ms. Alford in her federal criminal case, Mr. Vogel made sexual advances towards her and engaged in sexual intercourse with her on three occasions. Further, on at least one occasion, Ms. Alford expressed reluctance to engage in further sexual intercourse, but she agreed to do so only after Mr. Vogel persisted in asking her to engage in sexual activity. It is true that Ms. Alford testified that Mr. Vogel told her not to "let his feelings towards [her] interfere with him being [her] lawyer because he was just a man and stuff." Additionally, Mr. Vogel explained that he attempted to speak to Ms. Alford about a consensual relationship and his role as her attorney but that he did not do so formally. He also stated that he told Ms. Alford several times that his role as her attorney and his feelings for her had nothing to do with one another. However, as we previously have mentioned, the record does not demonstrate that Mr. Vogel ever made Ms. Alford aware of the "relevant circumstances and of the material and reasonably foreseeable ways that the conflict could have adverse effects" on her interests. Tenn. Sup. Ct. R. 8, RPC 1.7 cmt. [18]; see also Tenn. Sup. Ct. R. 8, RPC 1.0(e).

Additionally, the evidence indicates that Mr. Vogel's actions caused injury to Ms. Alford. As the Panel found, Mr. Vogel's misconduct involved the unfair exploitation of his fiduciary role. By exploiting his fiduciary role, Mr. Vogel violated his duty not to use the trust of Ms. Alford to her disadvantage. See Tenn. Sup. Ct. R. 8, RPC 1.7 cmt. [12a] ("A sexual relationship between lawyer and client can involve unfair exploitation of the lawyer's fiduciary role and thereby violate the lawyer's basic obligation not to use the trust of the client to the client's disadvantage."). We conclude that the use of Ms. Alford's trust to her disadvantage constitutes injury as defined in the ABA Standards. The evidence also indicates that Mr. Vogel's misconduct caused potential injury to Ms. Alford, as it could have harmed her criminal case. If Mr. Vogel had not been relieved as counsel, his sexual interest in Ms. Alford could have affected the quality of his representation significantly. Thus, Mr. Vogel's conduct meets the requirements of ABA Standard 4.32. Accordingly, we agree with the Panel that a suspension is the appropriate baseline sanction for Mr. Vogel's conduct with regard to the Alford matter.

---

Tenn. Sup. Ct. R. 8, RPC 1.7 cmt. [12], [12a]. Comment [12b] discusses sexual relations between an attorney and the representative of an organizational client, which is not applicable to this case. See Tenn. Sup. Ct. R. 8, RPC 1.7 cmt. [12b].

## B. Aggravating and Mitigating Circumstances

We next determine "whether the sanction should be increased or decreased due to aggravating and mitigating circumstances, if any." Bailey, 441 S.W.3d at 235 (quoting Bd. of Prof'l Responsibility v. Cowan, 388 S.W.3d 264, 268 (Tenn. 2012)); see ABA Standards 9.1-9.4. This Court considers the aggravating and mitigating circumstances enumerated in the ABA Standards to be "illustrative rather than exclusive." Lockett, 380 S.W.3d at 28. "'Any considerations or factors' justifying an increase or decrease in the sanction may be considered." Bailey, 441 S.W.3d at 235 (quoting Lockett, 380 S.W.3d at 28).

In determining the appropriate punishment for Mr. Vogel's conduct with respect to the Alford matter, the Panel found the following mitigating circumstances:

> Mr. Vogel's recognition of the fact that he had a problematic disorder; the willingness of his wife and other professional associates who know Mr. Vogel to continue to support him; the proactive establishment and implementation of safeguards regarding Mr. Vogel's future interaction with female clients; Mr. Vogel's willingness to enter inpatient treatment; [and] his compliant participation in the Tennessee Lawyer's Assistance Program (TLAP) and the extensive rehabilitation criteria with which Mr. Vogel has complied.

After reviewing the record, we agree with the Panel that these circumstances serve as mitigating circumstances in the present case.

Mr. Vogel asks this Court to consider the following as additional mitigating circumstances:

> [that] this matter has been ongoing for two years, [that] he has been open and honest with the investigation not only by the District Court but also by the Board, [that he] has gone above and beyond what is seen in current precedent for rehabilitation and behavior modification prior to any formal charges being filed by the Board, [that he] has been exposed to public shame and ridicule in a Knoxville News Sentinel article published both in hard copy and online, and [that he] has shown nothing but remorse for his actions.

The Panel chose not to recognize these as mitigating circumstances. Mr. Vogel's openness and honesty throughout the Board and federal court investigations is a circumstance that depends on an assessment of Mr. Vogel's credibility and the credibility of those testifying on his behalf. See Lockett, 380 S.W.3d at 23-24 (providing that "a timely, good-faith effort to make restitution, a full disclosure and cooperative attitude

-22-

toward the proceedings, [and] character references" depend on an assessment of credibility). Mr. Vogel's remorse likewise depends on a credibility assessment. See id. Because hearing panels are "uniquely suited to make credibility determinations of witnesses," we decline to assess the credibility of the witnesses in this case. Long v. Bd. of Prof'l Responsibility, 435 S.W.3d 174, 181 (Tenn. 2014) (quoting Culp v. Bd. of Prof'l Responsibility, 407 S.W.3d 201, 208 (Tenn. 2013)). Accordingly, we do not consider Mr. Vogel's openness and honesty throughout the Board and federal court investigations and his remorse as mitigating circumstances in this case.

We also decline to consider "that this matter has been ongoing for two years" as a mitigating circumstance in this case. Although ABA Standard 9.32(j) lists "delay in disciplinary proceedings" as a potential mitigating circumstance, we do not find it applicable to this case. The record demonstrates that the Board filed its Petition for Discipline approximately eleven months after receiving the report of misconduct in the Alford matter and approximately nine months after receiving the complaint of misconduct in the Horn-Brichetto matter. Additionally, the record shows that the Board filed its Petition for Discipline approximately five months before the disciplinary hearing and approximately six months before the Panel entered its judgment. We cannot say that the length of Mr. Vogel's disciplinary proceedings constitutes a delay warranting mitigation of Mr. Vogel's punishment. See ABA Standard 9.32(j); see also In re Peasley, 90 P.3d 764, 777-78 (Ariz. 2004) (considering delay as a mitigating circumstance where initial complaint of misconduct was filed with the State Bar nearly four years before disciplinary hearing was conducted and nearly five years before hearing officer issued his report); In re Conduct of Lawrence, 98 P.3d 366, 379-80 (Or. 2004) (considering delay as a mitigating circumstance where trial panel's disciplinary decision was issued more than five years after the misconduct occurred); In re Disciplinary Proceeding Against VanDerbeek, 101 P.3d 88, 95 n.30 (Wash. 2004) (considering delay as a mitigating circumstance where the majority of client grievances against attorney were from six to nine years prior to the disciplinary hearing).

Further, we do not consider that Mr. Vogel "has been exposed to public shame and ridicule in a Knoxville News Sentinel article" to be a mitigating circumstance in this case, as it finds no support in the record. We also decline to consider that Mr. Vogel "has gone above and beyond what is seen in current precedent for rehabilitation and behavior modification prior to any formal charges being filed by the Board" as an additional mitigating circumstance in this case, as it is substantially related to the following mitigating circumstances considered by the Panel: "Mr. Vogel's willingness to enter inpatient treatment[, as well as] his compliant participation in the Tennessee Lawyer's Assistance Program (TLAP) and the extensive rehabilitation criteria with which [he] has complied." Thus, we find that it would be inappropriate to consider this circumstance as an independent mitigating circumstance.

Additionally, the Panel found the following aggravating circumstances:

Ms. Alford's vulnerability due to her young age and the fact that she was under the influence of drugs at the time of Mr. Vogel's persistent sexual advances; the fact that she "really did not want to have sex with Mr. Vogel but felt submissive to him – asking him to 'just hurry' – and that she saw Mr. Vogel as an authority figure who could control the next 10 years of her life"; and, Mr. Vogel was serving as Ms. Alford's appointed counsel demonstrating her lack of financial resources to end the relationship by discharging Mr. Vogel and retaining other counsel.

Mr. Vogel claims that the Panel only found one substantive aggravating circumstance—the vulnerability of Ms. Alford. We disagree. While these circumstances are somewhat related to the overall vulnerability of Ms. Alford, they are all relevant considerations in determining the existence and the magnitude of aggravating circumstances.

The Board submits that "the most important factor in determining the appropriate sanction in any case is its own particular circumstances. Most significant among them in this case is the vulnerability of Ms. Alford." The Board asserts that Ms. Alford faced felony charges in federal court, that Mr. Vogel was her court-appointed attorney and "she didn't have the option of choosing another," that Ms. Alford was using drugs at the time, and that "[t]heir difference in age, education and position made Mr. Vogel an authority figure with all the power in their relationship."

The Board also argues that the facts in this case justify the consideration of two additional aggravating factors: 1) Mr. Vogel's substantial experience in the practice of law and 2) multiple offenses.

The record supports both of these factors. Before engaging in the conduct at the center of this disciplinary proceeding, Mr. Vogel had been practicing law in Tennessee since approximately 2004. Thus, we conclude that Mr. Vogel's substantial experience in the practice of law serves as an additional aggravating factor in this case. See ABA Standard 9.22(i). Additionally, this disciplinary proceeding concerns Mr. Vogel's conduct with regard to the Horn-Brichetto matter and the Alford matter. Mr. Vogel has argued that "multiple offenses" should not be considered as an aggravating factor based on his assertion that the Horn-Brichetto and Alford complaints "were each held back for a period of time until the Board decided to file them together." Alternatively, he has asked that his multiple offenses not be weighted heavily in light of the procedure followed by the Board. We find that this argument lacks merit. There is no evidence in the record to suggest that the procedure followed by the Board in filing its Petition for Discipline against Mr. Vogel was improper. See Tenn. Sup. Ct. R. 9, § 8 (discussing the procedure for investigating and filing disciplinary actions against attorneys). Thus, we conclude

that "multiple offenses" properly serves as an additional aggravating factor in this case. See ABA Standard 9.22(d).

Having now considered the aggravating and mitigating circumstances of this case, before reaching our decision, we also must consider whether the punishment imposed by the Panel is uniform with other disciplinary decisions involving similar circumstances. See Tenn. Sup. Ct. R. 9, § 8.4; Lockett, 380 S.W.3d at 29; Maddux, 148 S.W. 3d at 40.

### *Uniformity of Punishment*

Mr. Vogel argues that the punishment imposed by the Panel is "more than sufficient" based upon sanctions that have been imposed in similar cases. In fact, he argues that his punishment should be reduced to a one-year suspension with the full period served on probation if the Court seeks uniformity in punishments. In support of his argument, Mr. Vogel cites three other disciplinary cases from this state involving sexual misconduct.[19] See In re: Thomas F. DiLustro, BPR #18624, B.O.P.R. Nos. 26592-2(K)-TH, 26992-2(K)-TH (Tenn. B.P.R. Oct. 24, 2005) (publicly censuring attorney for engaging in a sexual relationship with a client whom he was appointed to represent in a dependency and neglect proceeding and denying the sexual relationship to a judge); In re: Kirk Lee Clements, BPR #20672, B.O.P.R. No. 27956-5-sg (Tenn. B.P.R. Aug. 5, 2005) (publicly censuring attorney for engaging in a sexual relationship with a client); In re: F. Chris Cawood, BPR #001851, B.O.P.R. Nos. 2000-1158-2-H, 2000-1194-2-H (Tenn. B.P.R. Mar. 30, 2001) (publicly censuring attorney for conflict of interest arising out of attorney's personal relationship with a client). Mr. Vogel also cites two disciplinary cases from this state involving an attorney's disclosure of a client's confidential information and notes that the punishment in each case was a public censure. See In re: James Franklin Logan, Jr., BPR No. 758, B.O.P.R. No. 34662-3-PS (Tenn. B.P.R. Oct. 16, 2013); In re: Shawn P. Sirgo, BPR No. 25693, B.O.P.R. No. 33343c-5-KB (Tenn. B.P.R. Jan. 12, 2011).

Additionally, Mr. Vogel argues that "[c]urrent case law also indicates that varying degrees of active suspension are imposed only when multiple aggravating factors exit [sic]." He cites a number of disciplinary matters in which multiple aggravating factors were found to exist. See Mabry v. Bd. of Prof'l Responsibility, 458 S.W.3d 900, 911 (Tenn. 2014); In re: Charles Michael Clifford, BPR #1544, No. M2014-02192-SC-BAR-BP, B.O.P.R. No. 2014-2309-2-AJ (Tenn. Nov. 25, 2014); In re: John Edward Herbison, BPR #12659, No. M2014-02193-SC-BAR-BP, B.O.P.R. No. 2013-2186-6-AW (Tenn. Nov. 20, 2014); Skouteris v. Bd. of Prof'l Responsibility, 430 S.W.3d 359, 368 (Tenn. 2014); Flowers v. Bd. of Prof'l Responsibility, 314 S.W.3d 882, 902 (Tenn. 2010); Sneed

---

[19] Both parties cite to multiple disciplinary action notices as support for their positions. The Board of Professional Responsibility of the Supreme Court of Tennessee announces public disciplinary actions taken by the Board and this Court to the public and legal community. These notices and other information can be found at: http://www.tbpr.org/ (last visited Jan. 28, 2016).

v. Bd. of Prof'l Responsibility, 301 S.W.3d 603, 618 (Tenn. 2010); Bd. of Prof'l Responsibility v. Allison, 284 S.W.3d 316, 327 (Tenn. 2009); Galbreath v. Bd. of Prof'l Responsibility, 121 S.W.3d 660, 668 (Tenn. 2003). Based on the decisions in these disciplinary matters, Mr. Vogel submits that the punishment imposed by the Panel is "more than sufficient and comports with previous decisions involving multiple claims approved by this Court."

Mr. Vogel also points to a number of decisions that imposed punishments ranging from a one-year probation to a ninety-day active suspension followed by six months of probation. See Hancock v. Bd. of Prof'l Responsibility, 447 S.W.3d 844, 858 (Tenn. 2014); Bailey, 441 S.W.3d at 237; In re: Adam Wilding Parrish, BPR #21917, No. M2014-01446-SC-BAR-BP, B.O.P.R. No. 2013-2277-4-AW (Tenn. July 30, 2014); In re: Patricia Donice Butler, BPR #22706, No. M2014-01312-SC-BAR-BP, B.O.P.R. No. 2012-2117-2-KB (Tenn. July 28, 2014); In re: Jon David Rogers, BPR #30635, No. M2014-01222-SC-BAR-BP, B.O.P.R. No. 2013-2267-6-AJ (Tenn. July 3, 2014). Based on these decisions, Mr. Vogel states that his punishment "may be on the heavy side of punishment but at the least is consistent with current Board treatment of Rules violations."

The Board asserts that disciplinary matters in Tennessee involving a conflict of interest arising out of an attorney's sexual relationship with a client are varied. The Board cites In re: F. Chris Cawood, BPR #001851, B.O.P.R. Nos. 2000-1158-2-H, 2000-1194-2-H (Tenn. B.P.R. Mar. 30, 2001); In re: Kirk Lee Clements, BPR #20672, B.O.P.R. No. 27956-5-sg (Tenn. B.P.R. Aug. 5, 2005); and In re: Thomas F. DiLustro, BPR #18624, B.O.P.R. File Nos. 26592-2(K)-TH, 26992-2(K)-TH (Tenn. B.P.R. Oct. 24, 2005), but contends that the following cases are more analogous to Mr. Vogel's case because they involve attorneys that committed multiple offenses: In re: Lance W. Parr, BPR #024651, No. M2012-00574-SC-BPR-BP, B.O.P.R. No. 2009-1821-3-RS (Tenn. Mar. 23, 2012) (suspending attorney for one year for engaging in an affair with a client in a divorce proceeding, improperly notarizing and forging signatures on an annual accounting that he filed in court, and misrepresenting the accuracy of the accounting to the court, in addition to other misconduct); In re: Charles A. Sevier, BPR #007648, No. M2009-02638-SC-BPO-BP, B.O.P.R. No. 2007-1667-9-LC (Tenn. Dec. 23, 2009) (imposing a one-year suspension, with six months of the suspension suspended, for attorney's failure to inform client in a divorce proceeding that he had an affair with the client's wife prior to the representation); In re: Bobby A. McGee, BPR #09222, No. M2006-01083-SC-BPO-BP, B.O.P.R. No. 2004-1429-6-SG (Tenn. May 25, 2006) (suspending attorney for three years, with all but ninety days of the suspension suspended, for engaging in a sexual relationship with two clients, co-signing a loan for a client, misleading a court, and engaging in improper contact with a juror).

Although the disciplinary decisions cited by the Board and Mr. Vogel bear a number of similarities to the present case, we do not find any of them sufficiently similar

to the case before us to serve as direct precedent for the punishment in this case. Specifically, we note that the clients in those cases did not have the particular vulnerability of Ms. Alford and that a number of those cases involved misconduct that is distinguishable from the misconduct at issue in this case. In fact, although Mr. Vogel argues to the contrary, there appears to be a lack of disciplinary decisions from this state involving circumstances similar to those of the present case. Moreover, none of these cases appear to involve continued sexual advances and sexual activity after the client requested to cease such conduct.

We also look to cases from other jurisdictions. Mr. Vogel states that "even in states which also have not adopted the Model Rules covering sexual relationships with clients, the disciplinary decisions by the Courts of those states are not consistent." In support of his assertion, he cites Matter of DiPippo, 678 A.2d 454, 456-57 (R.I. 1996) (suspending attorney for three months for engaging in a sexual relationship with a client in a divorce proceeding and certifying false information on a client's loan application); Matter of DiSandro, 680 A.2d 73, 75 (R.I. 1996) (publicly censuring attorney for engaging in a sexual relationship with a client in a divorce proceeding); and In re Application for Disciplinary Action Against Chinquist, 714 N.W.2d 469, 476 (N.D. 2006) (suspending attorney for six months and one day for engaging in a sexual relationship with a client in a domestic relations case, accepting large cash payments from the client without providing an accounting, charging an unreasonable fee, and accepting money from the client to represent another individual without advising the client to seek independent legal counsel).

The Board cites a number of cases from other jurisdictions concerning an attorney's sexual relationship with a client and states that the cases involve many different factual circumstances and result in the imposition of a variety of punishments. See People v. Zeilinger, 814 P.2d 808, 810 (Colo. 1991) (publicly reprimanding attorney for engaging in a sexual relationship with a client in a marriage dissolution matter); In re Rinella, 677 N.E.2d 909, 916 (Ill. 1997) (imposing a three-year suspension against attorney who engaged in sexual activity with multiple clients and testified falsely before the disciplinary commission); Matter of Tsoutsouris, 748 N.E.2d 856, 860 (Ind. 2001) (imposing a thirty-day suspension against attorney who engaged in sexual relationship with a client in divorce proceeding); Matter of Grimm, 674 N.E.2d 551, 555 (Ind. 1996) (imposing a one-year suspension for attorney's sexual relationship with client, failure to inform client of escalating legal bills, failure to provide client notice of intent to file attorney lien, charging unreasonable fee, failure to "take[] care of" client's legal fees as assured, and providing false information to the disciplinary commission and court); Matter of Wood, 358 N.E.2d 128, 133 (Ind. 1976) (imposing a suspension of not less than one year against attorney who attempted to exchange legal services for sexual activity); Comm. on Prof'l Ethics & Conduct of Iowa State Bar Ass'n v. Durham, 279 N.W.2d 280, 286 (Iowa 1979) (publicly reprimanding and admonishing attorney for sexual contact with an incarcerated client); Matter of Berg, 955 P.2d 1240, 1257 (Kan. 1998)

-27-

(disbarring attorney for inappropriate sexual activity with numerous vulnerable clients); In re DeFrancesch, 877 So.2d 71, 77 (La. 2004) (imposing a two-year suspension, with all but one year and one day of suspension suspended, against attorney who attempted to coerce a female client into engaging in sexual relations with him as "punishment" for missing payment on her legal fee); In re Gore, 752 So.2d 853, 856 (La. 2000) (imposing a six-month suspension, followed by two years of probation, against attorney who engaged in a sexual relationship with a client and failed to advise the client that potential conflict of interest existed); Matter of Rudnick, 581 N.Y.S.2d 206, 207-08 (N.Y. 1992) (imposing a two-year suspension against attorney for threatening to abandon a client's child custody case if she did not continue sexual relationship); Disciplinary Counsel v. Hines, 977 N.E.2d 575, 578 (Ohio 2012) (imposing a conditionally stayed six-month suspension against attorney who engaged in an inappropriate sexual relationship with a vulnerable client); Cleveland Bar Ass'n v. Feneli, 712 N.E.2d 119, 121 (Ohio 1999) (imposing an eighteen-month suspension, with six months of the suspension stayed, against attorney who engaged in a sexual relationship with a client and proposed that the client barter sexual activity as payment for legal fees owed to attorney); Matter of Mayer, 722 S.E.2d 800, 802 (S.C. 2012) (publicly reprimanding attorney for representing client with whom he had conflict of interest arising out of sexual relationship, providing financial assistance to client, and failing to maintain separate account for client funds); In re Disciplinary Proceeding Against Halverson, 998 P.2d 833, 848 (Wash. 2000) (imposing a one-year suspension against attorney who engaged in sexual relationship with a marriage dissolution client), abrogated by In re Disciplinary Proceeding Against Anschell, 69 P.3d 844, 853 (Wash. 2003).

Indeed, it appears that other jurisdictions have imposed a variety of sanctions in disciplinary cases involving an attorney's sexual relationship with a client. See Iowa Sup. Ct. Attorney Disciplinary Bd. v. Moothart, 860 N.W.2d 598, 616 (Iowa 2015) (discussing sanctions imposed in other jurisdictions in cases involving sexual misconduct by an attorney). Courts in these jurisdictions have imposed sanctions ranging from "a public reprimand to disbarment depending on the number of victims and interactions, as well as the severity of the alleged misconduct." Id. Their decisions show that no one punishment is necessarily more appropriate than any other in these types of cases. Thus, we emphasize the importance of the specific circumstances of Mr. Vogel's case to our review under Tennessee Supreme Court Rule 9, section 8.4.

Upon our review of the entire record and the applicable law, we conclude that Mr. Vogel's misconduct necessitates a greater punishment than that imposed by the Panel. We have determined that the appropriate punishment is a one-year suspension, with the entire suspension to be served on active suspension. Most concerning to the Court is Mr. Vogel's misconduct with regard to the Alford matter, as it involved a sexual relationship with a highly vulnerable client. "The relationship between lawyer and client is a fiduciary one in which the lawyer occupies the highest position of trust and confidence. . . . The client's dependence on the lawyer's knowledge of the law is likely to make the

relationship between the lawyer and client unequal." Tenn. Sup. Ct. R. 8, RPC 1.7 cmt. [12], [12a]. The importance of safeguarding the trust of vulnerable clients cannot be overstated, as these clients are often particularly dependent upon the professional judgment and ability of attorneys. See also People v. Good, 893 P.2d 101, 103 (Colo. 1995) ("Often the lawyer-client relationship is characterized by the dependence of the client on the lawyer's professional judgment, and a sexual relationship may well result from the lawyer's exploitation of the lawyer's dominant position."); Fla. Bar v. Bryant, 813 So. 2d 38, 44 n.9 (Fla. 2002) ("The lawyer-client relationship is grounded on mutual trust. A sexual relationship that exploits that trust compromises the lawyer-client relationship."); Iowa Sup. Ct. Attorney Disciplinary Bd. v. Morrison, 727 N.W.2d 115, 118 (Iowa 2007) ("[A] sexual relationship between attorney and client may be harmful to the client's interest. This . . . 'presents an even greater danger to the client seeking advice in times of personal crises such as divorce, death of a loved one, or when facing criminal charges.'") (quoting Iowa Code of Prof'l Responsibility EC 5-25); Disciplinary Counsel v. Booher, 664 N.E.2d 522, 522 (Ohio 1996) ("The more vulnerable the client, the heavier is the obligation upon the attorney not to exploit the situation for his own advantage.").

Ms. Alford was, as the Panel described, a "young, drug using, court-appointed client who was under federal indictment for drug related charges." By making sexual advances towards Ms. Alford, engaging in a sexual relationship with her, pleading with her on one occasion to engage in a sexual relationship after she expressed her reluctance to do so, and continuing to serve as her attorney, Mr. Vogel failed to safeguard the trust of a vulnerable client and exploited his fiduciary role. This is particularly egregious in this case in light of the questionable consensual nature of the sexual relationship, given Ms. Alford's uncontroverted reluctance to continue to engage in sexual relations with Mr. Vogel. In our view, even in considering the mitigating circumstances in this case, Mr. Vogel's conduct represents a serious violation of the Rules of Professional Conduct and warrants a one-year active suspension.

We find the rationale in Booher to be particularly persuasive in this case. 664 N.E.2d at 522-23. In Booher, the Supreme Court of Ohio imposed a one-year suspension against an attorney who engaged in sexual activity with an incarcerated client. See id. at 523. In rendering its decision, the court stated:

> The case before us involves court-appointed counsel for a criminal defendant. The lawyer-client relation in a criminal matter is inherently unequal. The client's reliance on the ability of her counsel in a crisis situation has the effect of putting the lawyer in a position of dominance and the client in a position of dependence and vulnerability. The more vulnerable the client, the heavier is the obligation upon the attorney not to exploit the situation for his own advantage.

Id.

-29-

As do all attorneys licensed to practice law in this state, Mr. Vogel has a duty to "act at all times, both professionally and personally, in conformity with the standards imposed upon members of the bar as conditions for the privilege to practice law." Tenn. Sup. Ct. R. 9, § 3.1. Mr. Vogel's misconduct with respect to the Horn-Brichetto matter and the Alford matter evidences that he has failed to comply with his duty.

"[T]his Court takes seriously its obligation to supervise and regulate the practice of law." Sneed v. Bd. of Prof'l Responsibility, 301 S.W.3d 603, 618 (Tenn. 2010). We believe that a one-year suspension, with the entire suspension to be served on active suspension, is the minimum punishment that fulfills our duty in this case.

## Conclusion

Based upon our careful consideration of the entire record "with a view to attaining uniformity of punishment throughout the state and appropriateness of punishment under the circumstances of [this] case," Tenn. Sup. Ct. R. 9, § 8.4, we modify the judgment of the Hearing Panel to impose a one-year suspension from the practice of law, with the entirety of the suspension to be served on active suspension.

_____
JEFFREY S. BIVINS, JUSTICE

-30-